**UNITED STATES of America**

v.

**James HARRIS, Jr.**

**Crim. No. 75–523.**

United States District Court,
E. D. Pennsylvania.

Oct. 19, 1976.

Robert S. Forster, Jr., Asst. U. S. Atty., Robert E. J. Curran, U. S. Atty., Philadelphia, Pa., for plaintiff.

Edward M. Gallagher, Media, Pa., for defendant.

## MEMORANDUM AND ORDER

FOGEL, District Judge.

Defendant, James Harris, Jr., after a non-jury trial before this Court, was adjudged guilty on February 13, 1976, of the offenses of transportation in interstate commerce of a stolen motor vehicle, and theft from an interstate shipment, violations of 18 U.S.C. §§ 2312 and 659, respectively. We issued special findings from the bench on that date.

Pursuant to Rules 33 and 34, Federal Rules of Criminal Procedure, defendant has now filed dual motions in which he seeks a new trial, or, alternatively, arrest of judgment. These motions present the following issues for resolution: (1) whether defendant's Motions for Acquittal at trial should have been granted; (2) whether evidence which was the fruit of the stop of the motor vehicle in this case should have been suppressed; (3) whether certain pretrial statements made by defendant should have been suppressed; (4) whether evidence of a pretrial identification of defendant should have been suppressed; (5) whether our adjudication of guilt was contrary to the weight of evidence; (6) whether there was insufficient evidence presented at trial to justify our finding of guilt; and (7) whether this Court lacked jurisdiction over the subject matter of the offense.

We have carefully considered all of these points in light of the entire record; we find all of defendant's allegations of error to be without merit. Accordingly, the Motions for New Trial And/Or Arrest of Judgment before this Court must, and will be, denied.

Our reasons follow.

## I. PROCEDURAL AND FACTUAL HISTORY OF THE CASE

### A. Factual Background

We need not detail all of the facts pertaining to the offenses for which defendant has been indicted and adjudged guilty. An extensive discussion of these facts may be found in our Memorandum and Order of December 5, 1975, which is reported at 404 F.Supp. 1116. However, a brief recapitulation of these facts is in order: (1) on July 3, 1975 at approximately 1:00 A.M., Patrolman Bell of the Burlington Township Police Department noticed a tractor-trailer traveling on a small country road known as Little Oxmeade Road; (2) this tractor-trailer was owned by K & K Transport Company, and the company name was painted on the sides of the trailer; (3) based upon his experience as a local police officer and his knowledge of the area as a resident on that thoroughfare, Patrolman Bell knew that it was highly unusual for a commercial vehicle of that nature to traverse Little Oxmeade Road, particularly at that hour of the morning; (4) his suspicions aroused, Patrolman Bell radioed Sergeant Komerosky of the same police force to assist him in stopping the truck for investigatory purposes; (5) the two officers pulled the truck over and Sergeant Komerosky questioned the driver, who was the defendant; (6) although defendant was able to produce a driver's license and registration, he was vague about his destination; (7) Sergeant Komerosky knew from his experience as a former truck driver that the destination of freight could be adduced from the bill of lading which a truck driver would customarily carry with him; (8) accordingly, Sergeant Komerosky asked defendant to produce a bill of lading; (9) defendant was unable to supply such a document; (10) the Sergeant then requested that defendant open the rear doors of the truck so he could inspect the contents, and defendant complied with this request; (11) an examination of the parcels of freight revealed that none were addressed to areas to which defendant had stated he was heading; (12) although defendant claimed he was employed by K & K Transport Company, he could not provide the name of his immediate supervisor; (13) based upon his belief that further investigation was warranted, Sergeant Komerosky asked defendant to follow him to police headquarters; (14) at headquarters, the Sergeant attempted to telephone K & K Transport to verify defendant's story; because of the hour, he was not able to communicate with anyone at that company's

office; (15) he therefore permitted defendant to depart in the tractor-trailer; (16) upon K & K Transport's subsequent report that the tractor-trailer in question had been stolen, the FBI commenced an investigation; in the course of this inquiry, Patrolman Bell and Sergeant Komerosky were asked to view a series of photographs to determine whether they could identify the driver of the truck they had stopped; (17) both officers, separately, identified the defendant as the driver; (18) a warrant was issued for defendant's arrest; (19) upon arrest, defendant was advised of his Fifth Amendment rights, in accordance with the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); he nevertheless voluntarily provided the interrogating officer with a statement, in which he admitted his participation in the offenses for which he had been convicted.

### B. Procedural History

Prior to trial, defendant filed a motion to suppress the following material: (1) that evidence which was the fruit of the stop of the tractor-trailer; (2) the inculpatory statements made by defendant to the interrogating officer; and (3) the evidence arising from the pretrial identification of defendant by Patrolman Bell and Sergeant Komerosky. A suppression hearing was held before us on October 14, 1975; based upon the testimony adduced at this hearing, and the briefs submitted by the parties, we denied defendant's motion to suppress in a Memorandum and Order dated December 5, 1975. The case proceeded to trial without a jury, and we issued our finding of guilt as to both counts of the indictment on February 13, 1976. Defendant subsequently filed the motions presently before us.

### II. MOTION IN ARREST OF JUDGMENT

Under Rule 34, Federal Rules of Criminal Procedure, a motion in arrest of judgment may be granted "if the indictment or information does not charge an offense or if the court was without jurisdiction of the offense charged." In the matter before us, defendant avers that this Court was without jurisdiction.

The indictment in this case charged defendant with Theft from Interstate Shipment and Interstate Transportation of a Stolen Motor Vehicle, violations of 18 U.S.C. §§ 659 and 2312, respectively. With respect to the charge of theft from an interstate shipment, section 659 states in relevant part:

> The offense shall be deemed to have been committed . . . in the district where the violation first occurred . . . .

With respect to the charge of interstate transportation of a stolen motor vehicle, section 2312 refers on this point to section 3237 of Title 18, which reads as follows:

> (a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

▮ Thus, under both sections 659 and 2312, jurisdiction is conferred upon a court in the district in which an offense first occurred or commenced. The testimony of an employee of the trucking company which owned the vehicle in question established that the vehicle was parked at a terminal in Northeast Philadelphia at approximately 6:00 P.M. on the evening of July 2nd. The testimony of two New Jersey police officers established that the vehicle was stopped at 1:30 A.M. on the morning of July 3rd. The officers stopped the truck which was being driven by the defendant on a rural New Jersey highway.

▮ As part of the evidence presented at trial, the prosecution introduced a confession signed by defendant. The defendant admitted stealing the vehicle from the Northeast Philadelphia terminal, and then driving the truck from Philadelphia to Burlington Township, New Jersey, where he was stopped and questioned by police. Accordingly, it is clear that this Court has

jurisdiction over defendant for the offenses charged; defendant's Motion in Arrest of Judgment will therefore be denied.

## III. MOTION FOR NEW TRIAL

The thrust of defendant's argument on this motion is directed to our refusal, both in response to a pretrial suppression motion, and at trial to suppress evidence obtained subsequent to the stop of the stolen truck. The other allegations of error asserted in defendant's motion are not even addressed by his supporting memorandum. Nevertheless, we have reviewed all of his claims, finding each to be without merit.

In considering defendant's motion for new trial, we turn to the central issue in the motion—namely, the propriety of the stop and search of the stolen truck. In our Memorandum and Order of December 5, 1975, which denied defendant's pretrial motion to suppress evidence, we gave extensive consideration to this subject. We now reaffirm the findings made in that Memorandum that the stop of the vehicle was reasonable under the circumstances, and that requisite probable cause and exigent circumstances existed to justify a search subsequent to the stop.

### A. The Stop

We note initially that the stop of the truck was a "seizure" within the Fourth Amendment and, in order to be upheld, must be found to have been "reasonable" within the dictates of that amendment. *Carpenter v. Sigler*, 419 F.2d 169 (8th Cir. 1969). In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court evolved a two-pronged standard for reviewing seizures under the Fourth Amendment. This inquiry is directed to "whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.*, at 20, 88 S.Ct. at 1879. Such inquiry requires a balancing of interests by the court, for "there can be no ready test for determining reasonableness other than by balancing the need to search against the

invasion which the search entails." *Camara v. Municipal Court*, 387 U.S. 523, 536–537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967).

In *Terry, supra,* the Court held that in order for a stop to be reasonable under the circumstances, the police officer must be able to point to articulable facts, not mere subjective speculation, to justify his actions:

> [D]ue weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts *in light of his experience.* (emphasis supplied; citation omitted)

*Terry, supra,* 392 U.S. at 27, 88 S.Ct. at 1883. *See also, Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

We believe that the facts in the instant case justify the investigatory stop made by Patrolman Bell and Sergeant Komerosky. The officers were presented with objective, articulable facts which created a reasonable inference of criminal activity. As noted in our previous opinion, these factors included the late hour, the nature of the vehicle, the type of thoroughfare, and, in particular, Patrolman Bell's unique knowledge of the traffic pattern on that roadway; he knew both from his experience as a local police officer, and from the fact that he lived on Little Oxmeade Road, that large commercial vehicles rarely traveled on that thoroughfare, and never at that hour of the night.

We stated in our prior opinion that local police officers should be less restricted in their investigative efforts than should federal officers. *See, United States v. Harris*, 404 F.Supp. 1116, 1125 (E.D.Pa.1975). This principle has been given recent support in *United States ex rel. Burbank v. Warden*, 535 F.2d 361 (7th Cir. 1976).

In *Burbank*, a local police officer had arrested the defendant on suspicion of murder, based upon a brief but detailed description provided by two murder witnesses, coupled with the fact that the local officer was so familiar with the people on his beat that he was able to match that description to defendant. In rejecting defendant's claim

that probable cause did not exist for the arrest, the Court of Appeals stated:

> When a policeman acts upon his personal knowledge, he must possess more than an inkling of criminal conduct or a vague suspicion of wrongdoing. [citation omitted] However, he must be permitted to make reasonable inferences based on his insight and experience about the area and inhabitants of his assignment. [citations omitted] The courts should encourage police officers to become involved in the communities in which they work and permit them to use the knowledge so acquired in detecting criminal activity.

*Id.,* at 366. *See also, Davis v. United States,* 133 U.S.App.D.C. 167, 409 F.2d 458, *cert. denied,* 395 U.S. 949, 89 S.Ct. 2031, 23 L.Ed.2d 469 (1969).

Defendant seeks support from *United States v. Torres-Urena,* 513 F.2d 540 (9th Cir. 1975). In that case a customs patrol officer, shortly after sun-up, noticed a man loading cardboard boxes onto a pickup truck. The truck was parked on a private driveway just off a roadway commonly traveled by pickup trucks, in an area close to the Mexican border. The officer stopped the truck when it emerged from the driveway, found marijuana in plain view on the truck, and arrested appellant, the driver. The sole justification for the stop advanced by the Government was that the activity noted by the officer occurred within a quarter-mile of the border. The Court of Appeals held the stop to be unreasonable, and therefore unconstitutional, because the defendant's activity at the time of the stop was "innocuous" and the officer was unable to point to any articulable facts which raised a reasonable inference of criminal activity.

■ As we noted in our earlier opinion, reasonableness in the context of an investigatory stop must ultimately be determined by the particular facts in each case. We believe the facts in *Torres-Urena* are clearly distinguishable from the facts before us. Specifically: (1) the arresting officer in *Torres-Urena* was a federal agent, while the instant case involves experienced local officers in a rural area; and (2) in *Torres-Urena,* pickup trucks were not uncommon in that area at that time of day, while we have emphasized in the case at bar that the presence of a tractor-trailer on Little Oxmeade Road in the early hours of the morning was virtually unique. Therefore, we do not believe that *Torres-Urena* is controlling in the case before us.

■ Another factor we emphasized in our earlier opinion, which we believe warrants reiteration, is the type of vehicle stopped. The basic purpose of the Fourth Amendment is to safeguard individual privacy from *unreasonable* governmental intrusion. *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). In determining reasonableness, the Supreme Court has, however, recognized that an individual's reasonable expectation of privacy is less in his private automobile than in his home. "[W]hat may be an unreasonable search of a house may be reasonable in the case of a motorcar [citation omitted]." *Preston v. United States,* 376 U.S. 364, 366–367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964). *Similarly, we believe that a person's reasonable expectation of privacy is not as great in a commercial vehicle as in a private automobile; consequently, what might be an unreasonable stop of a private automobile could well be reasonable in the case of a commercial vehicle.*

■ Therefore, the fact that defendant was subjected to an investigatory stop while driving a commercial vehicle, and not a private automobile, is a factor which may legitimately be considered in judging the reasonableness of the stop. *We emphasize that we do not find this factor to be dispositive of the issue of reasonableness; we do hold, however, that it is appropriate to consider the nature of the vehicle, along with all of the other factors presented by the particular circumstances before us, in determining whether a sound basis existed for the stop.*

■ In considering these circumstances, particularly the commercial nature of the vehicle stopped and Patrolman Bell's knowl-

edge of the nature of traffic in the area, we find the stop to be reasonable within the dictates of the Fourth Amendment. We thus reaffirm our former finding that the evidence derived from the stop was properly admitted at trial.

### B. The Search

■ The Fourth Amendment mandates that no searches or seizures may be conducted except pursuant to a valid warrant; there are, however, certain exceptions to the warrant requirement. A warrantless search of a motor vehicle may be "reasonable" if there exist both probable cause to search and exigent circumstances. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The basis for this exception to the general requirement of a warrant is that, in the context of a motor vehicle search it is often " 'not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' " 399 U.S. at 48, 90 S.Ct. at 1979, quoting from *Carroll v. United States*, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

In the instant case, it is clear that, prior to the stop of the vehicle, no probable cause existed to support a search of the back of the truck. However, defendant's evasive answers to Sergeant Komerosky's questions, and in particular his failure to produce a bill of lading upon request, when coupled with the circumstances of the stop, and Sergeant Komerosky's experience as a truck driver, were sufficient to create probable cause to search.

■ Finally, in determining whether exigent circumstances existed which would excuse the failure to obtain a warrant, we must examine all of the surrounding circumstances. *United States v. Valen*, 479 F.2d 467 (3d Cir. 1973), *cert. denied*, 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974). We believe the exigent circumstances requirement was satisfied in this case; at that hour of the morning in that rural locality, it would have taken considerable time to secure a search warrant, a period

during which the tractor-trailer could have been removed from the jurisdiction.

■ Accordingly, we find that there existed both the requisite probable cause and exigent circumstances to justify the warrantless search of the truck; thus, the search was reasonable under the Fourth Amendment, and evidence derived from the search was properly admitted at trial.

## IV. CONCLUSION

As previously noted, defendant has not pressed any of the other issues he raised in his motion. We have, however, thoroughly considered them and find them to be without merit.

We conclude that all of the issues raised by defendant must be resolved against him. Accordingly, his Motions for New Trial and/or Arrest of Judgment before this Court will be, and are denied.