499 A.2d 585

**COMMONWEALTH of Pennsylvania**

v.

**Edward HIGGINS, Jr., Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Calvin WIGGINS, Appellant.**

Superior Court of Pennsylvania.

Argued March 11, 1985.

Filed Aug. 16, 1985.

Reargument Denied Oct. 24, 1985.

Petition for Allowance of Appeal Denied Feb. 20, 1986.

John J. Stanzione, Assistant Public Defender, West Chester, for appellant in No. 1236.

Samuel C. Stretton, Philadelphia, for appellant in No. 1301.

Stuart B. Suss, Assistant District Attorney, West Chester, for Com. appellee.

Before SPAETH, President Judge, and JOHNSON and SHOYER *, JJ.

SPAETH, President Judge:

█ These are appeals from judgments of sentence for burglary, theft by unlawful taking, receiving stolen property, and criminal conspiracy. Appellants argue (1) that the suppression court erred in denying their motion to suppress, and (2) that the trial court erred in giving a "missing witness" charge to the jury. Appellant Higgins argues that the trial court erred (3) in not discharging him pursuant to Pa.R.Crim.P. 1100, and (4) in refusing to strike the panel after allegedly prejudicial remarks by the prosecutor. Appellant Wiggins argues [1] (5) that trial counsel was ineffec-

---

* The Honorable KENDALL H. SHOYER, Senior Judge of the Court of Common Pleas of Philadelphia County, is sitting by designation.

1. We might refuse to consider appellant Wiggins's arguments. His "Statement of Questions Presented" appears on pages 3 through 5 of his brief; the six questions, and five subquestions, there listed contain numerous citations to the record. Pa.R.App.P. 2116(a) provides in part:

tive in representing both him and appellant Higgins; that the trial court erred (6) in admitting opinion testimony; (7) in allowing into evidence allegedly prejudicial remarks by a witness and the prosecutor; (8) in giving an improper charge and making improper comments to the jury; and (9) that trial counsel was ineffective in not preserving arguments (6) through (8).

We shall discuss only the first of these nine arguments. Arguments (2) and (3) are without merit for the reasons expressed in the opinion of the trial court; argument (4) is without merit, *see Commonwealth v. Nesbitt*, 276 Pa.Super. 1, 10, 419 A.2d 64, 69 (1980); arguments (5) through (8) have been waived as they were neither raised at or before trial, and were not included either in post-trial motions or in the Statement of Matters Complained of on Appeal, which was requested by the trial court, *see* R. (Higgins) at 26; R. (Wiggins) at 11, 12, 21; *Commonwealth v. Gregory*, 309 Pa.Super. 529, 455 A.2d 1210 (1983); *Commonwealth v. Folino*, 293 Pa.Super. 347, 439 A.2d 145 (1981); Pa.R.App.P. 1925(b). As regards appellant Wiggins's claim that trial counsel was ineffective in not preserving arguments (5) through (8): Appellate counsel is not the same as trial counsel, and this appeal is his first opportunity to raise the ineffectiveness claim. It is therefore properly before us. However, argument (5) is without arguable merit; as the defenses of both appellants were entirely consistent, there was no potential harm to appellant Wig-

**Statement of Questions Involved**
**(a) General Rule.** The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind. It should not ordinarily exceed 15 lines, must never exceed one page, and must always be on a separate page, without any other matter appearing thereon. This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby.

In the interest of judicial economy, we shall consider Wiggins's arguments; if we did not do so now, we should probably have to do so later, in an ineffectiveness proceeding, for while Wiggins's counsel asked for and received leave to file a brief that exceeded our page limit, he could have no reasonable basis for his violation of Rule 2116(a).

gins from the dual representation, *see Commonwealth v. Joyner,* 489 Pa. 502, 506, 414 A.2d 1003, 1005 (1980); *compare Commonwealth v. Evans,* 306 Pa.Super. 25, 451 A.2d 1373 (1982), and trial counsel's decision to proceed was made only after full consultation and colloquy. N.T. 12/14/82 at 7–13, 17; argument (6) is without arguable merit, *see Commonwealth v. Bennett,* 471 Pa. 419, 423–24, 370 A.2d 373, 375 (1977); *Commonwealth v. Worrell,* 277 Pa.Super. 386, 391–92, 419 A.2d 1199, 1201 (1980); and so are arguments (7) and (8), *see Commonwealth v. Nesbitt, supra; Commonwealth v. Woodward,* 483 Pa. 1, 394 A.2d 508 (1978). Trial counsel was therefore not ineffective. *See Commonwealth v. Manigault,* 501 Pa. 506, 462 A.2d 239 (1983).

■ On appellants' first argument: [2] We have concluded that the facts of record establish that the police legitimately

**2.** Appellants were charged on six separate informations: Nos. 1358, 1360, 1482, 1483, 1521, and 1522, all of 1982. Three separate trials were held, at each of which appellants were codefendants: before Judge GAWTHROP on December 15, 1982 (Nos. 1482 and 1483); before Judge STIVELY on January 19, 1983 (Nos. 1358 and 1360); and before Judge SMITH on January 12–13, 1983 (Nos. 1521 and 1522). The judgments of sentence imposed on Nos. 1521 and 1522 are the subject of this appeal. However, appellants each filed one omnibus pretrial motion to suppress evidence relevant in all three trials. A hearing was held on the motions before Judge GAWTHROP on December 14, 1982. The transcript of this hearing is part of the record transmitted to us. Also part of this record is a computerized docket entry indicating that Judge GAWTHROP denied the motions on December 15, 1982. Judge GAWTHROP's opinion on the post-trial motions filed on Nos. 1482 and 1483 and the notes of testimony for the pre-trial proceedings on December 15, 1982, are not, however, part of this record. Appellant Wiggins has attached a copy of Judge GAWTHROP's opinion and excerpts from the December 15 notes of testimony to his brief. From these, we note that the suppression court found as a fact that all the testimony heard on December 14, 1982, was "truthful", and concluded as a matter of law that "the enlarging knowledge, factual knowledge clearly elevated the case to being one of there being probable cause." Brief for Appellant Wiggins, Exhibit [c] at 2, 7.

In reviewing the findings of a suppression court, we first determine whether the court's findings of fact, here to be viewed in the light most favorable to the Commonwealth, are supported by the record. We next review whether the suppression court has erred in the conclusions of law it has drawn from these facts. *See Commonwealth*

stopped appellants' truck in order to investigate their reasonable suspicion that it contained contraband, and that as a result of the investigation they had probable cause to conduct a warrantless search of the truck. We therefore conclude that there was no violation of appellants' Fourth Amendment rights and that the suppression court did not err.

On June 20, 1983, Officer McClure of the Uwchlan Township, Chester County, Pennsylvania, police department investigated a complaint that titanium scrap metal had been stolen from the A. Johnson Company. The officer interviewed Irv Brown, an employee of the company, who told him that the titanium had been stolen between 5 and 9 a.m. that morning. Brown showed Officer McClure tire tracks leading from the sections of the yard where the titanium was stored to a gate, which had been tampered with, at the rear of the property. The size of the tracks and the treadmarks suggested to the officer that a large truck had been used in the theft. June 20 was a Sunday morning and the A. Johnson Company was closed for business, as were all others in the industrial park in which it was located. N.T. at 39–43.

The next Sunday morning, June 27, 1983, at 9:30 a.m., Officer McClure received a "suspicious vehicle" complaint over the police radio. The source of the complaint was Robert Keen, an employee of Packaging Gravure Company. When he had come to the plant to finish some work, he had seen appellants washing down a red stake body truck[3] with Maryland plates in the company parking lot. It being a

v. Jackson, 497 Pa. 591, 595, 442 A.2d 1098, 1100 (1982), *quoting from Commonwealth v. Johnson,* 467 Pa. 146, 151–52, 354 A.2d 886, 889 (1976); *Commonwealth v. Webb,* 491 Pa. 329, 421 A.2d 161 (1980). We may make these determinations based on the record transmitted to us. In the interest of judicial economy, therefore, we will not remand for completion of the record.

3. A stake body truck, as described by Officer McClure, whose testimony was illustrated by photographs marked Commonwealth's Exhibit 2, is a four-wheeled vehicle somewhat larger than a pickup truck. The body of the truck is entirely enclosed by four panels, but the freight compartment is uncovered. N.T. at 46–47.

Sunday, Packaging Gravure was closed for business. N.T. at 26–27, 45–46, 52, 84. When appellants saw Keen, they moved the truck, and Keen saw a large stainless steel trough near where the rear end of the truck had been, with metal cooling pipes beside it. The trough was normally stored behind the plant, and Keen saw marks on the ground indicating that the trough had been dragged from behind the building to the truck, a distance of about thirty to forty feet. N.T. at 27–36.

On his way to investigate Keen's complaint, Officer McClure drove past the parking lot of Road Machinery Company, about three-tenths of a mile from Packaging Gravure and in the same industrial park. He noticed a red stake body truck driving through the Road Machinery parking lot. The officer knew that Road Machinery was not then open for business. He radioed police headquarters to confirm the "suspicious vehicle" description that Keen had reported. By the time the officer received confirmation, at about 9:40 a.m., the truck had left the parking lot. He stopped it at the intersection of Rutgers Drive and Route 100 in order to investigate. N.T. at 44, 47–50, 52. Peering through the cracks in the panels of the body of the truck, he saw that it contained scrap metal. He then questioned appellant Higgins, who said that he was lost, and, upon request, produced identification. Appellant Wiggins could produce no identification. N.T. at 50–53, 58.

Officer McClure called for backup police to detain the truck, and after they arrived, at about 9:50 a.m., he went to Packaging Gravure, where Keen fully recounted the incident that had led him to file the complaint. The officer himself saw the marks indicating how far the steel trough had been moved. N.T. at 53–56. The officer then went immediately to A. Johnson Company, where he spoke with Irv Brown. At the officer's request, Brown went to the detained truck and climbed over the back panel and into the freight compartment, where he found sheets of titanium that he identified as those stolen the preceding week from

the Johnson Company. Officer McClure then arrested appellants and impounded the truck. N.T. at 56–61, 82–83.

The first issue presented by these facts is whether Officer McClure was entitled to stop and investigate appellants' truck. On this issue, we find the recent decision in *United States v. Sharpe*, 470 U.S. ——, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), dispositive. The facts there were as follows. An agent of the Drug Enforcement Agency, on patrol on a coastal road in North Carolina, noticed a pickup truck, with an enclosed camper shell attached, followed closely by a Pontiac. The agent saw that the rear of the truck was "riding low" and did not sway when the truck passed over bumps. The agent concluded that the truck was heavily loaded, and after following it for about twenty miles, he decided to stop and investigate it. The agent radioed for and received backup assistance, and he and the police pursued the pickup truck and the Pontiac at high speed. The agent stopped the Pontiac; the truck sped ahead but was caught and stopped by the backup police about a half mile down the highway. *Id.* at ——, 105 S.Ct. at 1570–71, 84 L.Ed.2d at 609–10. After asking for identification and questioning the driver of the Pontiac, the agent radioed for more police to detain the Pontiac. When they arrived, he went to the detained truck, reaching it about fifteen minutes after it had been stopped. He confirmed his suspicions that it was heavily loaded, and after twice being refused permission to search it, sniffed near the rear window and smelled marijuana. He then opened the rear of the truck, using keys that he removed from the ignition, and discovered a considerable quantity of marijuana. After arresting the driver of the truck, the agent returned to the Pontiac and arrested its driver. Some thirty to forty minutes had passed since the Pontiac had been stopped. *Id.* at ——, 105 S.Ct. at 1571–1572, 84 L.Ed.2d at 610–611.

To evaluate whether the agent's stop of the Pontiac and pickup truck violated the Fourth Amendment, the Court applied the test stated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This test is that in evaluating

an investigative stop, a court must first inquire whether "the officer's action was justified at its inception," that is, whether it was based upon "specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion," *id.* at 20, 21, 88 S.Ct. at 1879, 1880, and next, must inquire "whether [the intrusion] was reasonably related in scope to the circumstances which justified the interference in the first place," *id.* at 20, 88 S.Ct. at 1879. The Court held that the length of a stop is but one factor to be considered in evaluating whether the scope of the intrusion was reasonable, and that "[i]n assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." 470 U.S. at —, 105 S.Ct. at 1575, 84 L.Ed.2d at 615–16. (citations omitted).

■ Applying this analysis here, we have no doubt that Officer McClure's investigative stop was justified at its inception by his reasonable suspicion, based upon articulable facts, that appellants' truck contained stolen scrap metal. The officer knew, or at least had reason to believe, that only one week earlier, scrap metal had been stolen by persons in a truck evidently similar to the truck he wished to stop and investigate, from a company in the same industrial park, at the same time—Sunday morning, when the companies in the park were closed. These facts were sufficient to suggest that the thefts were part of a pattern, and it would have been surprising if the officer, upon seeing the red stake body truck, had not suspected that he might have found the persons who had stolen metal from the Johnson company, and had apparently tried to steal metal from Packaging Gravure. *Cf. United States v. Hensley,* 469 U.S. —, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (description on "wanted flyer" issued by neighboring police department held sufficient basis for investigative stop); *United States v. Harris,* 421 F.Supp. 121 (E.D.Pa.1976), *aff'd* 565

F.2d 153 (3rd Cir.1977), *cert. denied* 434 U.S. 1072, 98 S.Ct. 1258, 55 L.Ed.2d 776 (1978) (*Terry* stop of tractor-trailer on small country road justified on basis of officer's knowledge that it was highly unusual for commercial vehicle to travel on such a road late at night); *Commonwealth v. Lawrence,* 311 Pa.Super. 326, 457 A.2d 909 (1983) (*Terry* stop justified where officer familiar with area knew that driver pulling out of driveway late at night did not live in residence nor own car he was driving).

■ We also have no doubt that the scope of the investigative stop of appellants' truck was "reasonably related … to the circumstances which justified the interference…." *Terry v. Ohio, supra,* 392 U.S., at 20, 88 S.Ct. at 1879. For the entire twenty to twenty-five minute period during which the truck was detained, Officer McClure "diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly, …" *United States v. Sharpe, supra,* 470 U.S., at ——, 105 S.Ct. at 1575, 84 L.Ed.2d at 616. Once the officer had found, by peering through the cracks in the panels of the truck, that it contained scrap metal, the next step was to determine whether the metal had been stolen. To this end, after obtaining backup assistance to detain the truck, the officer spent the entire period of the stop conducting an investigation, first interviewing Keen, then interviewing Brown, and finally, bringing Brown to the detained truck. The investigative stop of the truck did not, therefore, violate appellant's Fourth Amendment rights. *See United States v. Sharpe, supra.*

This conclusion, however, does not end our inquiry, for appellants argue that even if the investigative stop was proper, as we have just held it was, nevertheless Brown's warrantless search of the freight compartment of their truck, at the request of Officer McClure, constituted an unreasonable search.

The Commonwealth argues that we ought not regard Brown's action as a search; it contends that this conclusion follows from the following propositions:

1) No search takes place unless there has been an intrusion into an area in which there exists a reasonable expectation of privacy.

2) There is a diminished expectation of privacy in an automobile as compared to a home or a person.

3) There is no expectation of privacy with respect to those areas of the exterior of a vehicle that are exposed to plain view.

Brief for Commonwealth at 27.

We are not persuaded by this argument. In fact the freight compartment of the truck was not "exposed to plain view." The truck was stopped on a public highway, where appellants had every right to be. Brown was unable to identify the titanium until he had climbed over the back panel and into the freight compartment. N.T. at 50, 82–83. Absent such an entry, the contents of the compartment were shielded from public view. *Compare Commonwealth v. Grabowski*, 306 Pa.Super. 483, 491, 452 A.2d 827, 831 (1982) (police view of vehicle identification number not search despite need to raise car on fork lift to view it, for "examination of the exterior of an automobile is *not*, for purposes of the Fourth Amendment, a 'search'"); *compare also Commonwealth v. Bosworth*, 310 Pa.Super. 378, 456 A.2d 661 (1983) (where vehicle is parked in area posted against trespassing and keys have been left in trunk, defendant has lost reasonable expectation of privacy in contents of the trunk). Moreover, Brown's search was state action within the Fourth Amendment, for in conducting it, he did not act as a private individual but as a surrogate of the police. *See Commonwealth v. Dembo*, 451 Pa. 1, 301 A.2d 689 (1973); *Commonwealth v. Borecky*, 277 Pa.Super. 244, 419 A.2d 753 (1980). We must therefore decide whether the warrantless search of appellant's truck was justified.

"To justify a warrantless search of an automobile, [an] officer must have independent probable cause to believe that a felony has been committed by the occupants of the vehicle, or that it has been used in the furtherance of the commission of a felony, or the officer must have a basis for

believing that evidence of a crime is concealed within the vehicle...." *Commonwealth v. Ramsey*, 259 Pa.Super. 240, 249, 393 A.2d 806, 811 (1978). *See also Commonwealth v. Hargraves*, 268 Pa.Super. 95, 98, 407 A.2d 454, 455 (1979) *citing Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) ("... a car may be searched or seized without a warrant if there are both exigent circumstances and probable cause to believe that the car will yield contraband or useful evidence for the prosecution of crime.")

 The probable cause necessary to conduct a warrantless search of a vehicle exists where "... the facts and circumstances within [the knowledge of the police], and of which they had reasonably trustworthy information, were sufficient in themselves to warrant a man of reasonable caution in the belief that [contraband] was being transported in the automobile [that] they stopped and searched." *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925). Probable cause for a warrantless search of a vehicle is distinct from probable cause to make an arrest: "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." *Id.* at 158–59, 45 S.Ct. at 287. Moreover, "automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize." *Chambers v. Maroney, supra,* 399 U.S., at 48, 90 S.Ct. at 1979, *citing Carroll v. United States, supra. See also Commonwealth v. Stein,* 303 Pa.Super. 336, 343, 449 A.2d 716, 719 (1982); *Commonwealth v. Berman,* 262 Pa.Super. 410, 414, 396 A.2d 1237, 1239 (1978). The basis of this rule is two-fold. First, there is "the diminished expectation of privacy which is accorded automobiles because of their open construction, their function, and their subjection to a myriad of state

regulations." *Commonwealth v. Timko,* 491 Pa. 32, 38, 417 A.2d 620, 623 (1980) *citing United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). This is particularly true in the case of a commercial vehicle as opposed to a private automobile. *See United States v. Harris, supra* at 126. Second, and more important, is the fact that automobiles are highly mobile and therefore likely to flee the jurisdiction before a search warrant can be obtained. *See Chambers v. Maroney, supra; Commonwealth v. Holzer,* 480 Pa. 93, 389 A.2d 101 (1978). Thus the "exigent circumstances" that justify a warrantless search will be found "where the probable cause arises (1) in an unforeseen way and shortly before the opportunity for search, [and] (2) at a time when the automobile is mobile so that the opportunity for search is fleeting." *Commonwealth v. Maione,* 227 Pa.Super. 239, 244, 324 A.2d 556, 559 (1974), *citing Chambers v. Maroney, supra,* 399 U.S., at 50–51, 90 S.Ct. at 1980–1981 (1970).

We have already discussed our conclusion that Officer McClure was justified in stopping appellants' truck because he reasonably suspected it might contain stolen metal. As a result of the ensuing investigation, the officer's reasonable suspicion was sufficiently confirmed so that he had probable cause to search—or to have Brown search—the freight compartment of the truck. This search could be conducted without a search warrant. Since the freight compartment was of open construction, and part of a commercial vehicle, appellants had a diminished expectation of privacy as to its contents. *United States v. Harris, supra* at 126. And since the officer came upon the truck unexpectedly, and at a time when it might leave the jurisdiction before he could obtain a search warrant, he was entitled to search it without a warrant. *See Chambers v. Maroney, supra,* 399 U.S., at 50–51, 90 S.Ct. at 1980–1981; *Commonwealth v. Maione, supra.*

Affirmed.