559 A.2d 931

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Carl Franz OGBORNE, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 1, 1988.

Filed May 1, 1989.

Reargument Denied July 10, 1989.

F. Kirk Adams, Media, for appellant.

Vram Nedurian, Jr., Assistant District Attorney, Newtown Square, for Com., appellee.

Before CAVANAUGH, TAMILIA and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence of May 13, 1988.[1] Following a non-jury trial on April 3, 1987, appellant was adjudicated guilty of possession of a controlled substance and possession with intent to deliver a controlled substance. He was found not guilty of posses-

---

1. Appellant was sentenced to imprisonment in a state correctional institution for a period of not less than two and one-half years nor more than five years for possession with intent to deliver a controlled substance. For the purposes of sentencing the charge of possession of a controlled substance merged with the charge of intent to deliver a controlled substance.

sion of drug paraphernalia.[2] For the reasons herein set forth, we reverse.

The pertinent facts are as follows: Detective Greenwalt of the Delaware County C.I.D. returned a telephone call from a confidential informant in the early evening of January 15, 1987. Over the past year the informant provided police with reliable information concerning drug activities in Delaware County. The informant told Detective Greenwalt that appellant would arrive later that evening in a black Dodge automobile at the 100 block of Saude Avenue, Tinicum Township. He further informed police that, based on personal knowledge, he knew the appellant would have in his possession approximately 10 bundles of the drug Phencyclidine (hereinafter P.C.P.). Detective Greenwalt testified that, after receiving the information from the confidential informant, he did not request a search warrant or arrest warrant because he did not think there was sufficient probable cause to obtain one. (N.T. Suppression Hearing 3/30/87, p. 33)

Detective Greenwalt knew appellant was involved in the distribution of P.C.P. in 1981 and 1985. He proceeded to call the Tinicum Township police and confirm that appellant and his wife resided at 115 Saude Avenue, and that a black Dodge was frequently parked in front of that property.

A police surveillance of the 100 block was set up that night. At approximately 11:20 p.m. the police observed a black Dodge enter Saude Avenue from Second Street. When the vehicle reached 115 Saude Avenue it turned into a private driveway. At this time Detective Greenwalt identified appellant as the driver of the car.

An unmarked police car operated by Detective Greenwalt immediately pulled into the driveway behind appellant's vehicle. Detective Greenwalt then activated the emergency red flashing lights mounted on the dashboard of the vehicle. Two additional police cars parked behind Detective Green-

2. The trial judge mistakenly indicates in his March 28, 1988 opinion that appellant was found guilty of possession of drug paraphenalia.

walt's automobile to prevent appellant from backing his vehicle onto the street.

As four or five officers surrounded appellant's car, Detective Greenwalt approached the driver's side of the black Dodge. He tapped on the car window, showed appellant his badge, and identified himself as a police officer. Detective Greenwalt testified at some point in time he reached back and rested his hand upon his service revolver, but did not draw the weapon. Detective Greenwalt repeatedly ordered appellant to shut off the engine, but appellant did not respond. After opening the driver's side door Detective Greenwalt again ordered appellant to turn off the motor. Upon detecting the odor of P.C.P., Detective Greenwalt ordered appellant to step out of the car.

A search of the appellant outside the vehicle resulted in the discovery of approximately 89 packets of P.C.P. A smaller amount of the drug was also found inside appellant's Dodge vehicle. The discovery of this evidence bottomed all the criminal charges for which appellant was convicted.

At the suppression hearing the Commonwealth testified it was its position that there was no probable cause to search appellant or appellant's vehicle for drugs until Detective Greenwalt smelled odor of P.C.P. emanating from the Dodge. (N.T. Suppression Hearing 3/30/87 p. 23, 29)

The sole issue presented by these facts is whether the police conducted a valid investigatory stop of the appellant prior to the search and seizure of the evidence.

 In evaluating an investigative stop, a court must first inquire whether the officer's action was justified at its inception. The stop must be based on specific and articulated facts, which, taken together with rational inferences from those facts, reasonably warrant the intrusion. Next, the court must inquire whether the intrusion was reasonably related in scope to the circumstances which justified the interference in the first place. *Commonwealth v. Higgins*, 346 Pa.Super. 238, 499 A.2d 585 (1985), *cert. denied* in

479 U.S. 841, 107 S.Ct. 149, 93 L.Ed.2d 90 quoting *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Traditionally, it was accepted that seizure of the person was required by the Fourth Amendment to be based on probable cause. The first recognition that the Fourth Amendment reasonableness requirement could be satisfied by a showing of something less than probable cause was announced in *Terry*. However, we are admonished to be mindful that the *Terry* principle is an exception to the general rule requiring probable cause and must not be extended in such a way as to swallow the rule. See generally, *Commonwealth v. Lovette*, 498 Pa. 665, 450 A.2d 975 (1982).

In the case *sub judice*, the Commonwealth argues Detective Greenwalt relied on specific articulated facts which provided reasonable cause to believe drugs might be found on the appellant or in his car. Appellee notes that Detective Greenwalt was contacted by a reliable informant who provided accurate information in the past concerning local drug activities. The informant told the Detective that appellant would drive a black Dodge vehicle to a certain city block on a particular night. He further informed police that he possessed personal knowledge that appellant would be carrying approximately 10 packets of P.C.P. Detective Greenwalt had prior knowledge of appellant's drug activities. A check with local authorities confirmed the appellant's home was located in the city block described by the informant. Based on these circumstances, the Commonwealth argues the police were entitled to stop and investigate the appellant for suspected drug use.

Appellant argues he is entitled to a new trial because the lower court erred by denying his motion to suppress the evidence obtained at the time of the arrest. He contends the police lacked the reasonable suspicion needed to justify an investigatory stop of his vehicle. We agree with the position of the appellant. Applying the aforementioned analysis of *Higgins* and *Terry*, we have no doubt Detective Greenwalt's investigatory stop was not justified at its inception.

Clearly, the pivotal piece of information in the case *sub judice* was informant's tip that appellant would be carrying drugs. Detective Greenwalt testified at the suppression hearing that he did not know the basis of the informant's tip, and that he did not ask the informant to reveal how he obtained such information. In the opinion of the Detective, the information regarding possession of P.C.P. by the appellant came from the informant's personal knowledge. (N.T. Suppression Hearing, p. 30)

■ In essence, Detective Greenwalt stopped appellant's vehicle *in his private driveway at his residence* based solely on the informant's unverified allegation that appellant was carrying drugs. Moreover, approximately five (5) hours elapsed since police received the informant's tip and the actual arrest was conducted.[3] Doubtless, enough time existed between the receipt of the confidential information and the stop for Detective Greenwalt to apply for a search warrant. However, in that time span no efforts were made by police to secure a search warrant. We do not retreat from holdings that the police, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure. *Terry*, 88 S.Ct. at 1879, quoting, *e.g.*, *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In most circumstances failure to comply with the warrant requirement can only be excused by exigent circumstances. *Terry*, 88 S.Ct. at 1879, quoting, *e.g.*, *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

In the case at bar Detective Greenwalt did not obtain a search warrant following the receipt of the informant's tip

3. Detective Greenwalt testified that he *returned* a telephone call from the informant in the "early evening hours" of January 15, 1987. (N.T. Suppression Hearing, p. 6) He proceeds to testify that a "couple of hours" elapsed from when he *received* the informant's telephone call and set up surveillance at 11 p.m. of 115 Saude Avenue. (N.T. Suppression Hearing, p. 10) As such, the testimony reveals a wide discrepancy regarding the actual time the police received the informant's tips. However, according to the trial court, the tip was received "during the early evening hours of January 15, 1987." (Trial Court Opinion, March 28, 1988, p. 2)

because he admitted the police did not have probable cause to do so. (N.T. Suppression Hearing 3/30/87 p. 20–21) Moreover, the record does not reflect that any exigent circumstances existed to justify the warrantless search. In the instant situation the police, armed with the uncorroborated tip that appellant possessed P.C.P. waited approximately five (5) hours before attempting to conduct a *Terry* investigative stop in a private driveway. Such police conduct, in effect, circumvents the warrant procedure by using information that does not rise to the level of probable cause to justify an investigative stop conducted literally hours after the information is received. Further, it makes a mockery out of the warrant procedure and departs from the factual circumstances buttressing *Terry* investigative stops.

In *Terry*, the police officer personally observed two men hover about a street corner for an extended period of time. The men paced alternately along an identical route, pausing to stare in the same store window roughly 24 times. The two individuals were eventually joined by another man in one of a number of conferences held upon the completion of their route. *Terry*, 88 S.Ct. at 1881. In *Terry* the police officer personally observed each suspect go through a series of acts, each of them perhaps innocent in itself, but which, taken together, warranted further investigation. *Id.* Clearly, the facts of the case on hand have no resemblance to the facts in *Terry* which justified the police officers invasion of Terry's personal security by searching him for weapons in the course of the investigation.

Instantly, Officer Greenwalt did not personally observe any unusual conduct to indicate criminal activity may have been afoot. We are not intimating that personal observation by the police of suspected criminal activity is a dogmatic requirement of *Terry* stops. However, we are of the opinion that investigative stops can not be justified by the receipt of uncorroborated allegations by a confidential informant acted on by police five (5) hours later. In other words, the factual circumstances of the case *sub judice* are simply too far removed from the line of cases upholding

*Terry* stops. *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (description on "wanted flyer" issued by neighboring police department held sufficient basis for investigative stop); *United States v. Harris,* 421 F.Supp. 121 (E.D.Pa.1976), *aff'd* 565 F.2d 153 (3rd Cir.1977), *cert. denied* 434 U.S. 1072, 98 S.Ct. 1258, 55 L.Ed.2d 776 (1978) (*Terry* stop of tractor-trailer on small country road justified on basis of officer's knowledge that it was highly unusual for commercial vehicle to travel on such a road late at night); *Commonwealth v. Lawrence,* 311 Pa.Super. 326, 457 A.2d 909 (1983) (*Terry* stop justified where officer familiar with area knew that driver pulling out of driveway late at night did not live in residence nor own car he was driving). See also, *Commonwealth v. Higgins,* 346 Pa.Super. 238, 499 A.2d 585 (1985), *cert. denied* in 479 U.S. 841, 107 S.Ct. 149, 93 L.Ed.2d 90.

In the case on hand the stop of appellant was premised solely on an informant's unverified allegation that appellant was carrying drugs. Granted, in the past the informant did provide police with reliable information about local drug operations. However, instantly the informant supplied police with no independent facts or additional reasons to corroborate his contention appellant possessed P.C.P.

Indeed, the actions of appellant were perfectly innocent. He arrived at his residence without any proof of criminal wrongdoing present. It was not until appellant was ordered out of his vehicle that the presence of contraband was discovered. However, up to that point in time there was no evidence of drug possession, or even traffic violations, to justify the stop.

The additional information provided by the informant concerning the color and model of appellant's car, and the estimated time of appellant's arrival at Saude Avenue, does not support the criminal nature of the informant's tip. The fact the Tinicum Township police confirmed that appellant lived on Saude Avenue and that a black Dodge automobile was frequently parked in front of the property, was information arguably available to anyone who knew appellant.

Moreover, Detective Greenwalt's knowledge that appellant was previously involved in drug activities in 1981 and 1985 does not justify a conclusion that appellant was again involved in drug operations in 1987. In other words, the nature of the additional facts told to Detective Greenwalt by the informant does not create or support a valid premise for reasonable suspicion of criminal activity by appellant. Thus, even if the factual circumstances in the case at bar were in accordance with a *Terry* stop, the police could not point to any articulated facts to premise the investigative stop of appellant's automobile other than the informant's unsupported allegation that appellant was carrying P.C.P.

■ In conclusion, we hold that police may not conduct a valid investigative stop based solely on a confidential informant's isolated and uncorroborated allegation that a particular individual is in possession of drugs. We do not imply that confidential information may not buttress a police officer's foundation for an investigative stop in situations where the officer can point to specific and articulated facts. However, in the absence of exigent circumstance, admittedly not present here, unsupported allegations by informants that certain individuals possess drugs which do not rise to the level of probable cause for a search warrant, may not be utilized by the police five (5) hours later to justify an investigative stop on a person's private property.

Judgment reversed. Jurisdiction relinquished.

TAMILIA, J., files a dissenting opinion.

TAMILA, Judge, dissenting:

I respectfully dissent. While much of what the majority concludes is correct, it errs when it refuses to acknowledge that information which might not support probable cause for a search warrant, when enhanced by surveillance and verification, will support a later arrest. This procedure is not at all uncommon and the majority's holding, if universally applied, will hamstring police in effectively dealing with the highly mobile and pervasive traffic in drugs.

Once the police verified the activity, information of which was supplied by the informant, they were permitted to make a *Terry*[1] type stop based on suspicion alone. Following the stop, upon detecting the odor of P.C.P. in the car, they were permitted to go further and pat down the persons for safety reasons. When the pat down disclosed packets, these were not to be ignored and their emission of the odor of P.C.P. entitled the police to proceed further with a more extensive search and arrest.

I would affirm the trial court and deny appellant's request for a new trial.

1. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).