577 A.2d 1387

COMMONWEALTH of Pennsylvania, Appellant,

v.

**Shelton SMITH.**

Superior Court of Pennsylvania.

Submitted April 18, 1990.

Filed Aug. 16, 1990.

Vram Nedurian, Jr., Asst. Dist. Atty., Newton Square, for Comm.

Shelton Smith, pro se.

Before CAVANAUGH, ROWLEY and HUDOCK, JJ.

ROWLEY, Judge:

This is an appeal by the Commonwealth of Pennsylvania from the trial court's order of June 21, 1989, granting appellee a new trial on the basis that the trial court had erred in not suppressing evidence. The evidence at issue consists of 40 ziplock bags containing varying amounts of cocaine, and one bag containing marijuana, that were found in appellee's pants pocket. As a result of the seizure, appellee was charged with one count of possession of a controlled substance, possession with intent to deliver, and possession of drug paraphernalia. Appellee filed an omnibus pre-trial motion challenging the legality of the search which resulted in the seizure of the evidence. The trial court held a hearing and denied the motion. The following day, appellee waived his right to a jury trial and the case was submitted to the trial court on facts stipulated to by appellee and the Commonwealth. The court adjudicated appellee guilty. Subsequently, the trial court reversed its decision concerning the legality of the seizure of evidence,

pursuant to *Commonwealth v. Ogborne,* 384 Pa.Super. 604, 559 A.2d 931 (1989). We reverse the order of the trial court and remand for imposition of sentence.

Where the Commonwealth is appealing the adverse decision of a suppression court, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Robinson,* 518 Pa. 156, 159–160, 541 A.2d 1387, 1389 (1988), citing, *Commonwealth v. Hamlin,* 503 Pa. 210, 215–216, 469 A.2d 137, 139 (1983). If the evidence supports the court's factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Jackson,* 359 Pa.Super. 433, 519 A.2d 427 (1986). It is for the trier of fact, rather than the reviewing court, to determine credibility. *Commonwealth v. Capers,* 340 Pa.Super. 136, 489 A.2d 879 (1985).

The relevant facts, as found in the record of the suppression hearing, are as follows: On July 6, 1988, at approximately 6:00 p.m., Officer John Finnegan of the Chester City Police Force received a telephone call from a paid informant with whom he had an ongoing relationship dating back approximately eight months. During that period, the informant had given information leading to the arrest of at least twenty individuals. N.T. of 2/6/89 at pp. 5, 12. The informant advised Finnegan that he had just observed a black male, wearing a white tank top shirt, bright yellow pants and a white hat, and selling cocaine in the area of 10th and McCafferty Streets in the City of Chester. This area was known to the officers of the Chester City Police Department as a high crime and drug trafficking area.

Because of other assignments, no police officers arrived at that location until 7:40 p.m. At that time, Officer Finnegan, Detective Greenwalt, and other officers of the Chester City Police Force deployed themselves around the area of 10th Street and McCafferty Place. Detective Greenwalt observed appellee, wearing the articles of clothing described

by the informant, walking on McCafferty Place from 11th Street to 10th Street, and speaking to a young woman.[1] A number of other persons were in the area. When appellee observed the presence of some of the police officers moving toward him from 11th Street, appellee continued walking toward 10th Street, accompanied by the young woman and looking over his shoulder at the police approaching from 11th Street. Unbeknownst to appellee, Detective Greenwalt was hiding near the corner of 10th Street behind a building. As appellee was looking over his shoulder at the police officers, Detective Greenwalt stepped from behind the building and identified himself. He asked appellee to step over to a fence next to the sidewalk, away from the young woman. Detective Greenwalt described appellee's demeanor as "real nervous," and thought that appellee was about to run away, and therefore, he grabbed appellee by the elbow and asked him again to step over to the fence. Appellee then stated, "I can't stay here. I've got to—I can't stay here, I can't stay here." Detective Greenwalt then pushed appellee towards the fence. N.T. of 2/6/89 at p. 26. Detective Greenwalt patted him down for weapons and felt a hard bulge in appellee's pocket, so he reached into the yellow sweat pants and into the pocket of the shorts which appellee was wearing under the sweat pants and found the plastic bags containing the drugs, $163 in currency, and a roll of lifesavers. N.T. of 2/6/89 at p. 27–28.

We note initially that appellee did not present any evidence to contradict that offered by the Commonwealth. The trial court rejected appellee's pre-trial motion to suppress the evidence, finding the Commonwealth's evidence at the suppression hearing credible, and ruling that the stop and frisk was legal. We are, therefore, bound by the trial court's findings of fact, as they are supported by the record. *See Robinson, supra, Jackson, supra,* and *Capers, supra.*

1. Detective Greenwalt testified that the area of McCafferty Village is a public housing project consisting of several rows of buildings, with public sidewalks between the buildings. N.T. of 2/6/89 at p. 25.

10

 Our examination of the conduct of the police must follow two separate inquiries: 1) the legality of the initial stop; and 2) the propriety of the officers' subsequent actions. *Commonwealth v. Jackson,* 359 Pa.Super. 433, 519 A.2d 427 (1986). To justify the initial stop, a police officer must rely on specific and articulable facts, which if taken together with rational inferences from those facts, reasonably warrant that intrusion. *Commonwealth v. Pine,* 370 Pa.Super. 410, 536 A.2d 811 (1988), *Jackson, supra.* As the Supreme Court has explained:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry*[2] recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616–17 (1972) (citations omitted).

The search or frisk incident to an investigatory stop must meet a higher threshold of justification. A police officer may legitimately search an individual's clothing in an attempt to discover the presence of weapons which might be used to endanger the officer or others if the officer observes unusual and suspicious conduct on the part of the individual seized which leads him to conclude that criminal activity is afoot and that the person with whom he is dealing may be armed and dangerous. *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969).

 After appellee filed his post-verdict motions in which he challenged the correctness of the trial court's ruling on his suppression motion, a panel of the Superior Court decided *Commonwealth v. Ogborne, supra,* which the trial court

2. *Terry v. Ohio,* 392 U.S. 1, 88 S.St. 1868, 20 L.Ed.2d 889 (1968).

relied upon in deciding to grant appellee a new trial. In *Ogborne*, the police received a tip from an informant, with whom they had an ongoing relationship, that Ogborne would be arriving at the 100 block of Saude Avenue, Tinicum Township, in a black Dodge automobile, and that he would have approximately 10 bundles of P.C.P. in his possession. The police confirmed that Ogborne lived at 115 Saude Avenue and that a black Dodge was frequently parked in front of that house. The police then set up a surveillance of the 100 block of Saude Avenue. Approximately five hours after receiving the telephone call, Ogborne entered his driveway in a black Dodge. The police immediately surrounded the car and blocked the driveway with a police car whose red dashboard light was flashing. After repeatedly ordering Ogborne to shut off his engine and exit the car, an officer opened the driver's door. Upon opening the door, the officer smelled the odor of P.C.P. and ordered Ogborne out of the car and a search was made of Ogborne resulting in the seizure of 89 packets of P.C.P. A search of the interior of the car resulted in the seizure of a smaller quantity of the drug. Ogborne moved for suppression of the evidence, which was denied, and was convicted of various criminal charges relating to his possession of the P.C.P.

The Superior Court reversed the trial court's ruling and held that the police lacked the reasonable suspicion needed to justify an investigatory stop. The Court summarized the basis for its holding as follows:

> In essence, Detective Greenwalt stopped (Ogborne's) vehicle *in his private driveway at his residence* based solely on the informant's unverified allegation that appellant was carrying drugs. Moreover, approximately five (5) hours elapsed since police received the informant's tip and the actual arrest was conducted. Doubtless, enough time existed between the receipt of the confidential information and the stop for Detective Greenwalt to apply for a search warrant. However, in that time span no efforts were made by police to secure a search warrant. We do

not retreat from holdings that the police, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure. In most circumstances failure to comply with the warrant requirement can only be excused by exigent circumstances.

*Id.,* 384 Pa.Superior Ct. at 609, 559 A.2d 931, 933–934 (emphasis in the original, footnote and citations omitted). The Court noted that the police admitted that they did not have probable cause to obtain a warrant, and that no evidence of exigent circumstances appeared in the record to justify a warrantless search. In closing, the Court stated:

[W]e hold that police may not conduct a valid investigative stop based solely on a confidential informant's isolated and uncorroborated allegation that a particular individual is in possession of drugs. *We do not imply that confidential information may not buttress a police officer's foundation for an investigative stop in situations where the officer can point to specific and articulated facts.* However, in the absence of exigent circumstance (sic), admittedly not present here, unsupported allegations by informants that certain individuals possess drugs which do not rise to the level of probable cause for a search warrant, may not be utilized by the police *five (5) hours later to justify an investigative stop on a person's private property.*

*Id.,* 384 Pa.Superior Ct. at 612, 559 A.2d at 935 (emphasis supplied).

The instant case is materially distinguishable from *Ogborne.* In *Ogborne,* the sole fact of which the police had knowledge when they stopped Ogborne in his own driveway at 11:00 p.m. getting out of his own car was the information provided by the confidential informant which admittedly was insufficient to support a search warrant. Aside from the informant's tip, the police had no information to suggest that Ogborne was engaging in any criminal activity, and Ogborne's own activity appeared to be entirely ordinary and circumspect.

In the present case, however, the police not only had the information provided by the confidential informant regard-

ing appellee's possession and sale of cocaine, but the police were aware that the area in which appellee was observed selling the drugs and in which the police found him was a high crime area, and appellee acted suspiciously as soon as he perceived the presence of the police and even before he had any reason to suspect that they wanted to stop him. These additional facts materially distinguish *Ogborne* and, at the same time, provide the basis for the investigatory stop. The police personally observed sufficient unusual behavior on the part of appellee. This fact, coupled with the reliable informant's tip to the police, warranted the investigatory stop. Moreover, since the area was known to be a high crime area, and appellee was acting suspiciously, it was not unreasonable for the police to frisk appellee to ensure their own safety.

Not only are the facts in the present case distinguishable from those in *Ogborne*, but they are substantially similar to those in *Williams, supra*. In *Williams*, a police officer was sitting in his cruiser in the early morning hours on patrol in a high crime area when he was approached by an informant who was known personally to him, and told that an individual was sitting in a nearby vehicle carrying drugs and had a gun in his waistband. The officer went to investigate and found the defendant seated in an automobile. He tapped on the window and asked the defendant to open the door. The defendant rolled down the window and the officer reached in and removed a revolver from the defendant's waistband. The gun had not been visible to the officer, but was in precisely the place indicated by the informant. The defendant was then arrested and a full search conducted of both the defendant and the car resulting in the finding of heroine, a machete and a second revolver.

In reversing the Circuit Court's granting of relief, the Supreme Court applied the principles set forth in *Terry*, and found that the officer acted justifiably in responding to the informant's tip. The Court explained that the informant was personally known to the officer and had provided

reliable information in the past; and the information provided was immediately verifiable at the scene. The Court also noted that under the state's law, the informant would have been subject to arrest for making a false complaint. The Court then recognized that, "while the Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or search warrant, the information carried enough indicia of reliability to justify the officer's forcible stop of Williams." *Williams*, at 147, 92 S.Ct. at 1924, 32 L.Ed.2d at 618. The Court went on to reject the defendant's argument that reasonable cause for a stop and frisk could only be based upon the officer's personal observations, and not on information supplied by another person.

On several occasions, the Superior Court has upheld investigative stops based upon information supplied to police officers. In *Commonwealth v. Prengle*, 293 Pa.Super. 64, 437 A.2d 992 (1981) the Superior Court affirmed a ruling that an officer was justified in making an investigative stop of a truck fifteen minutes after receiving a radio dispatch that a burglary had been committed, the perpetrator would be driving a truck matching a particular description and filled with certain stolen items, and the officer had positioned himself near an exit ramp from an expressway near the reported location of the burglary. Likewise, in *Commonwealth v. Janiak*, 368 Pa.Super. 626, 534 A.2d 833 (1987), a panel of this Court affirmed a ruling that police officers were justified in making an investigative stop of an automobile when they were informed via police radio of a report by a private citizen that an individual was driving while under the influence near their position, they only observed one vehicle on the roads described, and the only observation they had made was that the vehicle was traveling about 15 to 20 miles per hour.

Considering that the informant in the instant case was known to Officer Finnegan for eight months and had proven to be a reliable informant in the past, we find that the police were justified in responding to the tip and investi-

gating further, despite the fact that they were occupied with other matters and did not arrive at the described location for an hour and forty minutes. After they arrived, they then had the benefit of their own observations of appellee's suspicious behavior in addition to the information supplied by the informant. As appellee's suspicious behavior and nervousness grew, Detective Greenwalt, knowing that he was in a high crime area, was entitled to make an investigatory stop and pat down appellee to determine whether he was carrying weapons. Discovering the presence of a hard bulge in appellee's pants pocket, Detective Greenwalt had cause to investigate further to insure that the bulge was not a weapon. Finding that the investigatory stop of appellee was appropriate and that the subsequent frisk was warranted, we reverse the trial court's order granting appellee a new trial and suppressing the evidence.

Order reversed. Case remanded for imposition of sentence. Jurisdiction is relinquished.