The STATE of Texas, Appellant,

v.

Ronald Glen WILLIAMS, Appellee.

No. 13–90–319–CR.

Court of Appeals of Texas,
Corpus Christi.

April 11, 1991.

George J. Filley, III, Victoria, for appellant.

Stephen Cihal, Victoria, for appellee.

Before DORSEY, KENNEDY and BENAVIDES, JJ.

## OPINION

DORSEY, Justice.

Ronald Williams was indicted for possessing cocaine. In a pretrial motion to suppress, Williams argued the cocaine was discovered during an improper investigative stop. After conducting a hearing on the motion, the trial court suppressed the evidence, and the State appealed. We affirm the trial court's order suppressing the evidence.

The sole witness at the hearing was Officer Allen Smith of the Victoria police department. After hearing evidence on the motion to suppress, the trial court suppressed the evidence making certain findings of fact and conclusions of law in his order, specifically:

    1. The stop by Victoria Police Officer Allen Smith on November 24, 1989, was of a vehicle being driven by a unknown person, identified after the stop to be Williams, and that the purpose of the stop was to identify the driver;

    2. Williams was detained when Officer Smith stopped the vehicle that he was driving, and the detention of Williams was not a proper investigative stop in that it was not justified by specific and articulable facts;

    3. Assuming the investigative stop was justified, Officer Smith exceeded the scope of the stop when he asked for proof of liability insurance coverage;

    4. The abandonment of the alleged cocaine was a result of police misconduct; and

    5. Officer Smith's testimony was credible and true.

Officer Smith testified that on November 23, 1989, the day before the stop, a confidential informant approached him and said that Williams was selling cocaine and, at times, storing it in his pickup truck. The informant said he had actually seen the cocaine on Williams. The informant identified Williams by name and description and identified the truck by type and color. The informant said Williams was located in the 1000 block of South Depot, a place described as "under the hill." This information appears to have been the result of the informant's personal observations that day. There is no evidence that the informant had seen cocaine on Williams or in his truck at other times or that he believed that Williams would continue to sell cocaine from this location in the future. The informant had previously given "true and reliable" information to Smith numerous times, and his reliability and credibility are not in issue.

At some unspecified time after receiving the information, Smith drove by the place described by the informant, and Williams' truck was parked there. Smith witnessed "many subjects around the vehicle," although Williams was not in the vehicle, and Smith detected no illegal activity.

The next night, Smith again spoke to his confidential informant. Smith received no new information, and in fact the record shows that the informant did not tell Smith that he had seen any cocaine on Williams or in his truck on that day. More than four hours after talking to the informant, Smith saw Williams at Mr. C's, a location described as close to "under the hill," where Williams was putting gasoline into his vehicle. Smith saw Williams leave in the truck, stopped him and asked him for his driver's license and proof of insurance. Smith informed Williams that the purpose of the stop was to investigate the possible illegal narcotics activity. After Williams fumbled around for his insurance proof, Smith became concerned for his safety and asked Williams to step out of the truck. As Williams got out, he tossed a key case which was later found to contain numerous bags of cocaine. If there was any reason why Smith waited until the following day to investigate the informant's tip, none was shown. Smith never sought to obtain a warrant.

▬ At the suppression hearing, Williams argued that the investigatory stop was improper because Officer Smith re-

ceived "the information a substantial number of hours" before the search. In a motion to suppress hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim. App.1990) citing (*Cannon v. State*, 691 S.W.2d 664 (Tex.Crim.App.1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986)). The appellate court decides only whether the trial judge's fact findings are supported by the record, and does not engage in its own factual review. If the findings are supported by the record, the appellate court may not disturb them, but addresses only the question of whether the court below improperly applied the law to the facts. *Romero*, 800 S.W.2d at 543 (citing *Self v. State*, 709 S.W.2d 662 (Tex. Crim.App.1986)). The trial judge reasoned that this was not a proper investigative stop because there were no specific and articulable facts justifying it. The trial judge thus failed to find the facts necessary to support the investigative stop.

■ In its first point of error, the State generally argues that the stop was proper, noting that occupants of an automobile are subject to a brief investigatory stop. *See Shaffer v. State*, 562 S.W.2d 853, 855 (Tex. Crim.App.1978). However, the issue before us is not whether the actions of Officer Smith were a proper investigative stop; rather, the issue is whether the trial judge erred in failing to find that reasons given by Officer Smith justified the seizure as a matter of law. When a warrantless seizure or search occurs, the burden is on the State to show probable cause or reasonable suspicion based on specific and articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Lalande v. State*, 676 S.W.2d 115, 116 (Tex. Crim.App.1984); *Dill v. State*, 697 S.W.2d 702, 705 (Tex.App.—Corpus Christi 1985, pet. ref'd). The State failed to meet its burden below; it, therefore, has the onerous burden here of establishing as a matter of law that the seizure was proper or that the State met its burden below and the trial court erred.

■ Stopping an automobile constitutes a seizure within the context of the Fourth and Fourteenth Amendments to the U.S. Constitution, even though the purpose of the stop is limited and the resulting detention is brief. As such, the seizure must be reasonable in order to pass constitutional muster. An arbitrary stop by a police officer to check the identity of the driver is not a reasonable seizure under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). Although a brief stop constitutes a seizure and involves the Fourth Amendment, it may be done in the absence of probable cause in limited circumstances. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). Reasonable suspicion based on specific and articulable facts are necessary to justify an investigative stop. The reasonable suspicion may be that the person stopped was about to commit a crime, as in *Terry*, or was committing a crime at the moment of the stop, as in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), or that the person stopped was wanted in connection with a completed felony, as in *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).

■ The trial court could have found that Officer Smith had articulated no facts to show that Williams was, at the time of the stop, engaging in, or about to engage in, criminal activity. The evidence here shows that the informant saw Williams with cocaine on the day before the investigatory stop.[1] Smith had no information that Williams would still possess or would be selling cocaine on the day of the stop. Smith observed no activity on the day of the stop to indicate that Williams still possessed cocaine. In fact, a reasonable inference from Smith's testimony is that the informant observed no illegal activity on

---

1. An investigative stop can be based on information supplied solely by a reliable and credible informant. *See Adams*, 407 U.S. at 147, 92 S.Ct.

at 1923; *Milton v. State*, 549 S.W.2d 190, 191–93 (Tex.Crim.App.1977).

the day of the stop. By all accounts, Williams was merely going about his lawful business when he was stopped. An officer may also stop a person who is sought in connection with a prior crime. *Hensley,* 469 U.S. at 227–229, 105 S.Ct. at 679–680. While there was, of course, information from the informant that Williams had previously engaged in the felony of selling cocaine, this information had not been used to procure a warrant, and Williams was not "wanted" in connection with that offense. Rather, Officer Smith waited until the following day to act, without a warrant, on this information.

The critical issue is whether Officer Smith waited too long to act without a warrant upon the information supplied by the credible informant that Williams had committed a felony. Although we find scarce direct authority discussing the length of time an officer may wait to make a warrantless investigatory stop after receiving a tip, the entire body of law concerning investigative stops is premised on the field officer's ability to act *immediately,* without a warrant, when observing suspicious activity or when receiving information that criminal conduct is occurring or about to occur.[2] *See Terry,* 392 U.S. at 20, 88 S.Ct. at 1879.

■■■ Between the receipt of the informant's tip and the stop, Officer Smith had more than sufficient time to procure a warrant. Whenever practicable, the police should obtain advance judicial approval of searches and seizures through the warrant process. *Id.* In most circumstances, failure to comply with the warrant requirement can only be excused by exigent circumstances. *Id.* Although we recognize that Smith intended to conduct only an investigatory stop rather than a full-search of the vehicle, Smith should have procured a warrant under these circumstances. *See Commonwealth v. Ogborne,* 384 Pa.Super. 604, 559 A.2d 931, 932–35 (1989). Thus, the trial court could have found that the warrantless stop was invalid because Officer Smith should have procured a warrant.

For the above reasons, we hold that the trial court did not err in granting Williams' motion to suppress. The State's first point of error is overruled.

In its second point of error, the State contends that Officer Smith did not exceed the scope of the stop when he requested proof of insurance from Williams, and in its third point, the State contends that Williams' abandonment was not the product of police misconduct. Because we have found that the initial stop was improper, these points are without merit. The request for proof of insurance and Williams' abandonment were causally connected to the stop. *See Comer v. State,* 754 S.W.2d 656 (Tex.Crim.App.1988). The State's second and third points are overruled.

The order of the trial court suppressing the evidence is affirmed.

---

**2.** Generally, most stop cases address (1) whether the activity occurring within the officer's presence justified the stop, or (2) if an offense is known to have been committed, whether the description of the offender justified the stop of a particular individual. *See* 3 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 9.3(d–e) (1987).