Eutemio VELA, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–92–00908–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 27, 1994.

Geraldo Acosta, Stanley G. Schneider, Houston, for appellant.

Alan Curry, Houston, for appellee.

Before SEARS and LEE, JJ., and MORSE, J., sitting by designation.

## OPINION

ROBERT E. MORSE, Jr., Former Justice.

This is an appeal of a conviction for possession of cocaine. After his motion to suppress was denied, Appellant Vela pleaded no contest, and the trial court found him guilty. Vela now complains of the trial court's ruling on his motion to suppress. We affirm.

On Friday, February 7, 1992, at approximately 8:20 p.m., Officer Bobby Mathews saw a car stopped at a red light in Baytown. Officer Mathews saw that the car displayed a dealer's temporary cardboard tag (black-lettered on white) issued to a Houston dealership. The dealer's tag overlay the rear metal license plate. The dealership was located at least fifteen miles from Baytown. Officer Mathews stopped the car.

Appellant Vela was the sole occupant of the car. Officer Mathews asked Vela for his driver's license, and Vela produced it. Vela told Officer Mathews that he was not test-driving the car and that the car belonged to a friend. Vela did not give Officer Mathews the car's registration but did produce a sales receipt indicating that the car had been sold to a Francisco Abrego. There was a buyer's temporary cardboard tag (red-lettered on white), dated February 3, 1992, in the car, but the tag was not displayed.

Officer Mathews removed the dealer's tag and inspected the metal license plate underneath. He ran a registration check establishing that the car was properly registered and that there was no stolen report. Officer Mathews asked Vela for proof of auto liability insurance, which Vela could not produce.

Officer Mathews confiscated the dealer's tag and placed Vela under arrest for failure to show proof of auto liability insurance and for displaying a "fictitious" license plate.

Another officer arrived and asked Vela for permission to search the car. Vela consented, but no incriminating evidence was found.

Police took Vela to the Baytown City Jail. There, they took $1,219.19 out of Vela's pockets. Three of the bills had a white powder on them. A jailer found a clear wrapper in Vela's wallet with a white powder on it. The wrapper and one of the bills field-tested positive for cocaine. A subsequent lab analysis reported trace amounts of cocaine on all of the three bills and the wrapper.

It was stipulated that the police had no arrest warrant for Vela.

Vela does not expressly set out a point of error. But from his briefed argument we take his complaint to be that the trial court erred in denying his motion to suppress evidence because the evidence was obtained through an illegal search and seizure. Vela argues that his initial stop and detention violated the Fourth Amendment of the United States Constitution and Chapter 14 of the Texas Code of Criminal Procedure. U.S. CONST. amend. IV; TEX.CODE CRIM.PROC.ANN. art. 14.01 *et seq.* (Vernon 1977 & Supp.1994). He further complains that the subsequent warrantless search and seizure of evidence was without consent or probable cause.

In a motion to suppress hearing, the trial court is the sole trier of fact. *State v. Williams*, 812 S.W.2d 46, 48 (Tex.App.—Corpus Christi 1991, no pet.). As such, the trial court is the judge of the credibility of the witnesses as well as the weight to be given their testimony. *Id.* On appeal, we determine whether the trial court's fact findings are supported by the record and do not engage in our own factual review. *Id.* If the findings are supported by the record, we do not disturb them; instead, we address only the question whether the trial court improperly applied the law to the facts. *Id.* As here, where no findings of fact are filed, we presume that the trial court made the findings necessary to support its ruling so long

as those implied findings are supported by the record.

## The Initial Stop

To justify even a temporary detention, the officer must have specific articulable facts which, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the individual stopped for further investigation.... The officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, information that tends to connect the detained person with the unusual activity, and some indication that the activity is related to a crime.

*Moody v. State*, 778 S.W.2d 108, 110 (Tex. App.—Houston [14th Dist.] 1989, no pet.) (citations omitted).

According to Officer Mathews' testimony, the objective facts available to him were that (1) Vela's car displayed a temporary cardboard dealer's tag, (2) the time of his observation of Vela's car was several hours after a Friday workday had ended, (3) the dealer's tag was mounted in the rear license plate position, (4) in Mathews' experience, a dealer's tag was usually mounted in the rear window when a dealer was demonstrating a car to a prospective buyer, (5) the car did not display a buyer's temporary cardboard tag, (6) the car was at least 15 miles from Houston where the dealership on the dealer's tag was located, and (7) Mathews' was unaware of any capability to run a computer check on the numbers on the dealer's tag to determine if the car was stolen. While Officer Mathews did not articulate the specific statutory provisions for the offense or offenses he suspected were being committed, it is clear to us from his testimony, and the trial court could have found, that Officer Mathews was concerned with an offense resulting from the improper use of the temporary cardboard dealer's tag.

■ We find that there was support in the record for the trial court to have concluded that Officer Mathews' suspicion was reasonable based on implied findings that (1) Officer Mathews observed some activity out of the ordinary, i.e., a car displaying a temporary cardboard dealer's tag in an atypical, if not illegal, position on the car; long after the normal workday had ended; an unusually long distance from the car's ostensible home dealership; with no other vehicle identification number visible; (2) Vela was connected to the unusual activity as the driver of the car; and (3) Officer Mathews had some indication that the unusual activity was related to a crime, i.e., the violation by the dealer of TEX.REV.CIV.STAT.ANN. art. 6686(a)(4) (Vernon Supp.1994) (improper use of dealer's temporary cardboard tag); the violation by Vela of TEX.REV.CIV.STAT.ANN. art. 6675b–7 (Vernon Supp.1994) (display of a fictitious number plate or obscuring the metal number plate); or violation by Vela of TEX.REV.CIV. STAT.ANN. art. 6675a–3e, § 5(a) (Vernon Supp.1994) (failure to display two license number plates). We note that there was evidence in the record that Vela did not display a *buyer's* temporary cardboard tag that would have been valid for 20 days after purchase and would have made the car's distance from the dealership unremarkable.

Vela argues that his display of the dealer's tag was as consistent with innocent activity as criminal activity because there were multiple situations, other than a demonstration ride, where the display of the dealer's tag was proper. He directs us to TEX.REV.CIV. STAT.ANN. art. 6686(a)(4) (Vernon Supp.1994), which provides:

(4) Dealer's Temporary Cardboard Tags. Each dealer holding a current distinguishing number may issue temporary cardboard tags, which may only be used by such dealer or his employees for the following purposes:

(a) to demonstrate or cause to be demonstrated his unregistered vehicles to prospective buyers only for the purpose of sale....

(b) to convey or cause to be conveyed his unregistered vehicles from the dealer's place of business in one part of the State to his place of business in another part of the State, or from his place of business to a place to be repaired, reconditioned, or serviced, or from the point in this State where such vehicles are unloaded to his place of business, including the moving of such ve-

hicles from the State line to his place of business, or to convey such vehicles from one dealer's place of business to another dealer's place of business or from the point of purchase of such vehicles by the dealer to the dealer's place of business, or for the purpose of road testing. . . .

Such tags shall not be used to operate vehicles for the personal use of a dealer or his employees. Whenever a dealer sells an unregistered vehicle to a retail purchaser, it shall be such dealer's responsibility to display the Buyer's Temporary Cardboard Tag thereon. . . .

\* \* \* \* \* \*

■ But in *Crockett v. State*, 803 S.W.2d 308 (Tex.Crim.App.1991), the Court said: "[S]uch circumstances as will raise suspicion that illegal conduct is taking place need not be criminal in themselves. Rather, they may include any facts which in some measure render the likelihood of criminal conduct greater than it would otherwise be." *Id.* at 311. In our opinion, a car, 15 miles from its home dealership, displaying the dealer's temporary cardboard tag, late on a Friday evening, are sufficient circumstances to arouse a reasonable suspicion of a violation of art. 6686(a)(4), if not other offenses as well. This is so, even if it is ultimately determined that the display of the dealer's tag was proper. The level of suspicion necessary to justify a brief, investigatory stop does not rise to the level of probable cause necessary for a stop amounting to an arrest. *See id.*

Vela next asserts that a dealer's temporary cardboard tag may be placed over an existing license plate under certain circumstances. *See* 43 Tex.Admin.Code § 17.68(b). Therefore, he continues, there was nothing unusual about the dealer's tag not being displayed in the rear window of Vela's car. But Officer Mathews testified that the dealer's tag was usually in the rear window when a dealer was demonstrating a car, testimony that was not rebutted by the defense. Therefore, even if it was statutorily permissible to display a dealer's tag over the license plate in some circumstances, it was Mathews' experience that the tag was normally placed in the rear window. It was the exception to the normal practice that caught Officer Mathews' attention.

Vela further complains that there was nothing in the record to indicate that it was impossible for Officer Mathews to determine quickly by radio whether he could determine if a dealer's tag had been stolen or if a car was stolen bearing a dealer's tag. However, Vela cites no authority for the proposition that reasonable suspicion analysis requires that an investigating officer exhaust every alternative avenue of inquiry before making a brief investigative stop.

Finally, we find that Vela's reliance on *Moody, supra*, is misplaced. In *Moody*, this court held that a stop of a car was not based on a reasonable suspicion when:

[t]he only information possessed by the [arresting] officers was that the vehicle was listed as "suspicious" in some robberies. There is no indication of when or where these robberies occurred, no information connecting . . . the Appellant to these robberies, and no information on which to base a reasonable belief that the automobile or its occupants were at this time, or at any time in the past, involved in any criminal activities or in possession of any contraband or fruits of any crime.

*Moody*, 778 S.W.2d at 110.

In the present case, Officer Mathews' suspicion was not based on second-hand information as in *Moody*. Officer Mathews personally observed the unusual activity giving rise to his suspicion. Officer Mathews had first-hand observations on which to base his suspicion of a possible violation of Texas law.

In sum, we hold that the initial stop and detention of Vela's car was a legal investigative stop.

### The Arrest and Search

Vela argues that, even if his initial stop and detention were lawful, his subsequent arrest for failure to have proof of insurance or for displaying fictitious license plates was not based on probable cause.

Tex.Rev.Civ.Stat.Ann. art. 6701h, § 1A(a) (Vernon Supp.1994) provides: "[N]o motor vehicle may be operated in this State unless a policy of automobile liability insurance in at

least the minimum amounts to provide evidence of financial responsibility under this Act is in effect to insure against potential losses which may arise out of the operation of that vehicle." *Id.* "An operator of a motor vehicle who fails or refuses to furnish, on request of a peace officer ..., [proof of financial responsibility] is presumed to have operated the vehicle in violation of Section 1A of this Act." *Id.* § 1B(b); *see Sendejo v. State,* 841 S.W.2d 856, 859 (Tex.App.—Corpus Christi 1992, no pet.) (officer stopping defendant on traffic violation is within authority to ask for proof of liability insurance). "A person commits an offense if the person operates a motor vehicle in violation of Section 1A of this Act." *Id.* § 1C(a)(1). "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." TEX.CODE CRIM.PROC.ANN. art. 14.01(b) (Vernon 1977).

■ During Vela's brief investigative detention and routine questioning at the roadside, Vela admitted to Officer Mathews that he did not have proof of liability insurance. Vela was therefore in presumed violation of art. 6701h, § 1A(a) and subject to arrest.

■ Once under arrest and taken to jail, the search of Vela's person was justified as a search incident to his arrest or as a routine inventory search. *See Rogers v. State,* 774 S.W.2d 247, 264 (Tex.Crim.App.1989), *cert. denied,* 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989) ("When booked into a detention facility, [detainees] may be thoroughly searched without a warrant to make an inventory of their belongings."). It was during this search that police observed the white powder on some of Vela's money and on the clear wrapper.

■ Even assuming that Vela's arrest for failure to show proof of insurance was not legal, his arrest for improper display of motor vehicle identification was. Vela argues that there was no probable cause to arrest him for displaying "fictitious" license plates. He contends that art. 6686(a)(4), which regulates dealers and their agents in the use of dealers' temporary cardboard tags, places upon *the dealer,* not the customer, the duty of replacing the dealer's tag with a buyer's temporary cardboard tag. Vela maintains that only a dealer or his agent can violate the Act. Vela further argues that there was no evidence that the dealer's tag was, in fact, "fictitious." At most, he complains, the tag was a valid temporary tag being misused.

Vela was not operating the car as a dealer, employee of a dealer, or prospective buyer for one of the permissible uses provided in art. 6686(a)(4). Therefore, Vela's display of a temporary cardboard dealer's tag constituted the use of an incorrect or "fictitious" license plate in violation of TEX.REV.CIV.STAT.ANN. art. 6675b–7 (Vernon Supp.1994), which provides:

No person shall attach to or display on any motor vehicle any number plate or seal assigned to a different motor vehicle or assigned to it under any other motor vehicle law other than by the State Highway Department, or any registration seal other that assigned for the current year, or a homemade or fictitious number plate or seal. All letters, numbers and other identification marks shall be kept clear and distinct and free from grease or other blurring matter so that they may be plainly seen at all times during daylight....

We conclude that the trial court could have found that Officer Mathews had probable cause to believe that the cardboard dealer's tag on Vela's car was being used as a fictitious license plate for purposes of art. 6675b–7 because it was being displayed under inappropriate circumstances and *in lieu of* the display of the proper buyer's tag or metal license plates.

■ Moreover, the trial court could have found probable cause that Vela was operating the car in violation of TEX.REV.CIV.STAT.ANN. art. 6675a–3e, § 5(a) (Vernon Supp.1994), which provides:

A person commits an offense if the person operates a passenger car or a commercial motor vehicle on a public highway that does not display two license number plates, one at the front and one at the rear, that have been assigned by the department to the vehicle for the current registration period or have been validated by a symbol,

tab, or other device for the current registration period. *Id.*

The car's rear license plate was obscured by the cardboard dealer's tag. Therefore, the metal plate was not "displayed" for the purposes of art. 6675a–3e, § 5(a).

We hold that the evidence would support the trial court's implied finding that the police had probable cause that Vela was in violation of art. 6675b–7 or art. 6675a–3e, § 5(a) and so was subject to arrest under TEX.CODE CRIM.PROC.ANN. art. 14.01(b).

In conclusion, we find that the trial court did not err in denying Vela's motion to suppress. The initial stop, temporary detention, arrest, and search of Vela were legal. We therefore overrule Vela's sole point of error and affirm the judgment below.