Affirmed and Memorandum Opinion filed July 24, 2003

















Affirmed and
Memorandum Opinion filed July 24, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00620-CR

____________

 

SIMON HERRERA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

___________________________________________________________

 

On Appeal from
the County Criminal Court at Law No. 7

Harris County, Texas

Trial Court
Cause No. 1095971

 

___________________________________________________________

 

M E M O R A
N D U M   O P I N I O N

            After waiving his right to a trial
by jury, appellant Simon Herrera pleaded not guilty to the misdemeanor offense
of carrying a weapon and was sentenced to thirty days in jail.  In his sole point of error, appellant
contends the trial court erred in denying the motion to suppress.  In support of his argument, appellant
maintains (1) the officer did not have  reasonable suspicion to initially
detain appellant; and (2) the length of the detention, assuming the initial
stop was permissible, was unreasonable. 
We affirm.








Factual Background

            On January 11, 2002, Houston police
officer Mark McClinton was on routine patrol in a
marked police cruiser in an area commonly referred to as Denver Harbor.  McClinton, a ten
and one half year veteran of the Houston Police Department and an eight year
veteran of the Northwest Patrol, had made many arrests in the area and knew it
as one with a reputation for gang and drug-related activities.

            At approximately 6:00 p.m. that evening, McClinton
noticed an individual in a parked Chevrolet truck talking to another person
standing outside the vehicle, at the passenger’s side window.  As McClinton drew
closer to investigate, the individual outside the truck noticed the police
cruiser and rapidly walked to a nearby residence.  The vehicle quickly pulled away from the curb
and began to drive westbound.  McClinton described the encounter as “kind of
strange.”  McClinton
had noticed that the vehicle had an “old” temporary dealer’s license tag which,
under the circumstances, he considered to be improperly used.  He decided to follow the vehicle and turned
on his cruiser’s flashing lights.  The
vehicle continued to drive for six or seven blocks, and McClinton
called dispatch for assistance as he believed the driver of the vehicle was
refusing to stop.  Shortly thereafter,
the vehicle finally pulled over.

            McClinton
shined his spotlight into the vehicle and saw that the driver was moving around
inside the vehicle, particularly toward the glove compartment area.  McClinton testified
the behavior was “very, very suspicious,” as if the individual was trying to
hide or dispose of an item.  He
approached the vehicle and immediately detected the odor of marijuana from both
the vehicle and the driver.  McClinton then asked the driver why he did not stop after
the cruiser’s lights were flashing.  The
driver, later identified by McClinton as appellant,
stated that he did not see the lights. 
Shortly thereafter, back-up units arrived at the scene in response to McClinton’s call to dispatch.

            McClinton
directed appellant to exit the vehicle and walked him back to the cruiser for a
pat-down search.  Although he found no
weapons on appellant, McClinton did notice a “large
bulge” in his pocket, which appellant refused to identify.  Reaching into appellant’s pocket, McClinton discovered the bulge to be a “large amount of
cash.”

            Appellant and McClinton
then began to discuss why appellant’s vehicle displayed a temporary dealer’s
license tag.  McClinton
testified that appellant offered multiple conflicting stories as to the
ownership of the vehicle.  According to McClinton, appellant first told him that the reason the
vehicle displayed a temporary dealer’s license tag was because he was test
driving the vehicle from a nearby automobile dealership.  The cash was to be used as a down payment for
the vehicle.  McClinton
then followed appellant to the location of the automobile dealership to verify
his claims.

            Upon arriving at the dealership,
appellant quickly exited his vehicle and yelled at one of the salesman.  McClinton directed
appellant not to speak with any of the employees until he had an opportunity to
discuss the matter with them.  McClinton then spoke with an individual identifying himself
as “the part owner or son of the owner,” who told McClinton
that he did not know appellant or the vehicle in question.  After telling appellant he had a reason to
suspect that the vehicle was stolen, McClinton asked
appellant if the vehicle belonged to him. 
According to McClinton, appellant first said
he bought the vehicle from a person who worked for the lot but was unable to
describe the seller.  Finally, according
to McClinton, appellant admitted he did not own the
vehicle.  McClinton
then placed appellant in the rear of his police cruiser and requested a
drug-sniffing canine be sent to the scene. 


            Officer Mark Condon testified that
he arrived at the scene after McClinton had initially
detained appellant at the roadside. 
While there, Condon performed a “wingspan” search of the vehicle
appellant had been driving.  Later, after following appellant and McClinton
to the dealership and while waiting for the canine to arrive, Condon and
Officer Reuben Trevino performed an inventory and contraband search of the
vehicle.  In a space behind the
glove compartment, he discovered an “Uzi type handgun” and magazines.

            Appellant was ultimately charged
with the misdemeanor offense of carrying a handgun.  Appellant waived his right to a trial by jury
and pleaded not guilty to the offense. 
Appellant filed a “Motion to Suppress Evidence Obtained During Illegal Search And Seizure.”  After conducting the bench
trial and carrying the motion to suppress, the trial court found appellant
guilty.  Appellant was sentenced
to 30 days in jail.

Standard of Review

            In reviewing a trial court’s ruling
on a motion to suppress evidence, we apply a bifurcated standard of
review.  We give almost total deference
to the trial court’s determination of historical facts, while conducting a de
novo review of the trial court’s application of the law to those facts.  See
Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim.
App. 2002)  During
a motion to suppress hearing, the trial court is the sole trier
of fact; accordingly, the trial judge may choose to believe or disbelieve all
or any part of a witness’s testimony.  Id.  When, as here, no explicit findings of fact
are filed, we must view the evidence in the light most favorable to the ruling
and sustain the decision if it is correct on any applicable theory of the
law.  Id.

Standing

            As a preliminary matter, the State
contends appellant has not demonstrated standing to contest the search of the
vehicle because he gave conflicting stories regarding the vehicle’s ownership
and ultimately admitted to the officer that he did not own it.  

            The State has the burden to
establish a valid exception to the warrant requirement.  See Franklin v. State, 976 S.W.2d 780, 781 (Tex. App.—Houston [1st
Dist.] 1998, pet. ref’d).  However, a defendant who asserts a Fourth
Amendment claim has the initial burden to establish, as an element of that
claim, a legitimate expectation of privacy in the premises searched.  State v. Klima, 934 S.W.2d 109, 110–11
(Tex. Crim. App. 1996).  A defendant who does not meet that burden has
no standing to assert a claim to suppress evidence seized without a warrant,
and the trial court may deny the motion to suppress.  See id.  The State argues that the vehicle was stolen
and therefore appellant does not have the requisite standing to challenge the
constitutional validity of the search. 
Appellant, however, 
asserts that he has standing to object to the search “based upon
his legitimate expectation of privacy while driving alone in his automobile.”

            It is true that an appellant lacks
standing to contest the search of a stolen vehicle.  Busby
v. State, 990 S.W.2d 263, 270 (Tex. Crim. App.
1999) (noting that “[b]ecause the truck was stolen,
appellant had no standing to object to a search of that vehicle”); Walbey v. State ,
926 S.W.2d 307, 312 (Tex. Crim. App. 1996) (finding
that “appellant has no standing to contest seizure of items from a stolen
vehicle”).  Any expectation of privacy an
appellant might claim in a stolen vehicle is not one that society is prepared
to recognize as reasonable.  Hughes v. State, 897 S.W.2d 285, 305
(Tex. Crim. App. 1994); Patel v. State, 856 S.W.2d 486, 488 (Tex. App.—Houston [1st Dist.]
1993, pet. ref’d) (holding that “
appellant did not have a reasonable expectation of privacy and thus
lacked standing to contest the search of the stolen automobile”).  Thus, in the instant case, if appellant
acquired the vehicle only by reason of his criminal conduct, then he is in no
position to challenge the search.  See Jackson v. State, 745 S.W.2d 4, 7 (Tex. Crim. App. 1988); Viduarri v. State,
626 S.W.2d 749, 750 (Tex. Crim. App. 1981).  Although the vehicle was
not reported stolen, appellant admitted that he did not own it.  Even if we were to assume that appellant
manifested an actual and subjective expectation of privacy in the vehicle, the
record does not reflect that he established a lawful right of possession to the
vehicle with the concomitant rights.  See Jackson, 745 S.W.2d at 7. 
Thus, we conclude appellant has not met his burden to establish a
legitimate expectation of privacy in the vehicle.  See Klima, 934 S.W.2d at 110–11.

            However, even if appellant could
meet his burden to establish his Fourth Amendment standing to contest the
search, he waived the right to challenge the trial court’s ruling.

 

Waiver

            The State contends appellant has
waived review of the trial court’s denial of the motion to suppress because he
failed to object to testimony about the physical evidence prior to its
admission.  To preserve a complaint for
appellate review, the record must show the complaint was made to the trial
court by a timely request, objection, or motion stating the grounds for the
ruling sought with sufficient specificity to make the trial court aware of the
complaint and that the court ruled on the request, objection, or motion.  See Tex. R. App. P. 33.1(a); Aguilar
v. State, 26 S.W.3d 901, 905 (Tex. Crim. App. 2000).  To be timely, an objection must be made as
soon as the ground for complaint is apparent or should be apparent.  See
Aguilar, 26 S.W.3d at 905.  Indeed, it is fundamental that a specific
objection to inadmissible evidence be urged at the first opportunity in order
to be considered timely.  Id. at 905–06.

            An objection or motion to suppress
is not timely if it is made after the evidence or testimony relating to it is
admitted without objection.  See Marini v.
State, 593 S.W.2d 709, 714 (Tex. Crim. App.
[Panel Op.] 1980); Thomas v. State,
884 S.W.2d 215, 216 (Tex. App.—El Paso l994, pet. ref’d);
Turner v. State, 642 S.W.2d 216, 217
(Tex. App.—Houston [14th Dist.] 1982, no pet.); DeJesus Martinez v. State, No. 01-01-00260-CR, 2002 WL 1764938, at *2
(Tex. App.—Houston [1st Dist.] July 31, 2002, pet. ref’d) (not designated for
publication). 

            Appellant did not obtain a hearing
or ruling on his motion to suppress before trial, and the motion was carried
with the bench trial.  Under these
circumstances, the mere filing of the motion to suppress did not preserve
error.  Thomas, 884 S.W.2d at
216.  Accordingly, we must
determine whether appellant properly preserved error for our review.

            Although the State did not offer the
seized items as evidence during McClinton’s direct
examination, the prosecutor did give the pre-marked exhibits to him and asked
if he could identify them.  During McClinton’s direct examination, the following exchange took
place with regard to the seized items:

Q.  What did you observe after
you went over to the vehicle where Officer Condon was?

A.  I
observed an Uzi type machine pistol seated behind the glove compartment [sic]
of the dash.                                                                                                                           

. . . 

Q.  I’m showing you what’s been
marked as State’s Exhibit No. 2.  Can you
identify that?

A.  Yes.

Q.  What is it?

A.  This is what we call --

MS. LE: Objection.  At this time,
I object, Your Honor.

(Pause.)

MS. LE: Withdraw the objection, Your Honor.

THE COURT: All right.

Q.  (By Mr. Stein) Can you
identify it, please.

A.  Yes, this is an Uzi type of
machine pistol.  Some people call them
“street sweepers.”

Q.  Where did you see State’s
Exhibit No. 2 the first time?

A.  I saw it in the glove
compartment – behind the glove compartment of the dash of that vehicle that Mr.
Herrera was driving.

 

            McClinton
also discussed other items discovered in the vehicle, including magazines of
ammunition that were found in the glove compartment and a number of bullets
which were found both in the magazines and in the glove compartment.  Aside from the initial objection that was
immediately withdrawn, appellant did not object to McClinton’s
testimony.  By failing to object and
secure an adverse ruling on McClinton’s testimony
regarding the evidence, appellant waived his challenge.  See Marini, 593 S.W.2d at 714; Thomas, 884 S.W.2d at 216; Turner, 642 S.W.2d at 217.

            It was not until Condon testified on
direct examination that the State offered the weapon, the magazines, and the
ammunition into evidence.  Thereupon, the
following exchange took place:

Q:  On January 11th of 2002, when
you searched the defendant’s car, what did you discover behind the panel of the
glove compartment box?

A.  It was an Uzi type handgun
with two magazines.

 

The
State then laid its predicate and offered the exhibits into evidence.  Appellant, through his counsel, then objected
as follows:

MS. LE:  At this point and time,
Your Honor, I’m going to object to the admissibility of this exhibit because of
the illegal search and seizure and there was no probable cause to stop Mr.
Herrera in the first place.  And the
search exceeded the procedure, the exculpatory –

THE COURT:  Aren’t we doing the
motion to suppress along with the court trial?

MS. LE:  Yes.

THE COURT:  Overruled.  Be admitted.

 

            Even here, appellant’s objection is
untimely, as grounds for objection became apparent when the State asked its
question.  However, appellant did not
object until Condon testified regarding the challenged evidence.  Appellant has waived his challenge to the
search.  See Tex. R.
App. P. 33.1(a).  Moreover, even if we assume that appellant
did preserve his complaints, we conclude they are without merit. 

Initial Detention

            In his first point of error,
appellant contends that there was no reasonable suspicion to initially detain
appellant in the vehicle.  Traffic stops
by roving patrols are considered Fourth Amendment seizures.  Delaware v. Prouse, 440 U.S. 648, 653 (1979).  The Fourth
Amendment to the United States Constitution and article I, section
nine of the Texas Constitution exist to safeguard an individual’s
legitimate expectation of privacy from unreasonable governmental
intrusions.  See Villareal v. State, 935 S.W.2d 134, 138 (Tex. Crim.
App. 1996).  No evidence obtained by an
officer in violation of any provisions of the Constitution or laws of the State
of Texas, or of the Constitution or laws of the United States of America, shall
be admitted in evidence against the accused on the trial of any criminal
case.  Tex.
Code Crim. Proc. art. 38.23.

            An officer is permitted to make a
temporary investigative detention of an individual if the officer has
reasonable suspicion that some activity out of the ordinary is or has occurred,
some suggestion to connect the detainee with the unusual activity, and some
indication that the activity is related to a crime.  See Terry v. Ohio, 392 U.S. 1, 21
(1968).  Investigative detentions must be
reasonably related in scope to the circumstances that justified the
interference in the first place.  State v. Cardenas, 36 S.W.3d 243, 246
(Tex. App.—Houston [1st
Dist.] 2001, pet. ref’d).  To justify an intrusion, the officer must
reasonably surmise, based on specific and articulable
facts, that the detained person may be associated with a crime.  See
Terry, 392 U.S. at 21; Davis v. State, 829 S.W.2d 218, 219
(Tex. Crim. App. 1992).  The test for reasonable suspicion is a
factual one and is made and reviewed by considering the totality of the
circumstances at the time of the detention. 
See Loesch
v. State, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997). 
The level of suspicion necessary to justify a brief, investigatory stop
does not rise to the level of probable cause necessary for a stop amounting to
an arrest.  Crockett v. State, 803 S.W.2d 308, 311
(Tex. Crim. App. 1991).  The same standards for reasonable suspicion
apply whether the person detained is a pedestrian or occupant of an
automobile.  See United States v. Sharpe, 470 U.S. 675, 682
(1985); Carmouche v. State, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). 
Thus, we are called upon to determine whether there was reasonable
suspicion to detain appellant in his vehicle on the evening in question.  See United States v. Alvarado-Ramirez, 975 F. Supp. 906, 911 (W.D.
Tex. 1997). 

            We find that the totality of the
circumstances demonstrate that McClinton had
reasonable suspicion to detain appellant. 
McClinton testified he noticed that the car
appellant was driving was displaying only a paper automobile dealer’s tag.  The Transportation Code provides that a
dealer may issue a temporary cardboard tag for use on an unregistered vehicle
by the dealer or the dealer’s employees only to:

(1) demonstrate or cause to be demonstrated to
a prospective buyer the vehicle for sale purposes only;

(2) convey or cause to be conveyed the
vehicle:

(A) from one of the dealer’s places of
business in this state to another of the dealer’s places of business in this
state;

(B) from the dealer’s place of business to a
place the vehicle is to be repaired, reconditioned, or serviced;

(C) from the state line or a location in this
state where the vehicle is unloaded to the dealer’s place of business;

(D) from the dealer’s place of business to a
place of business of another dealer;

(E) from the point of purchase by the dealer
to the dealer’s place of business; or

(F) to road test the vehicle; or

(3) use the vehicle for or allow its use by a
charitable organization.

 

See Texas Transp. Code § 503.062.

 

            Considering the surrounding facts
and circumstances, McClinton suspected that appellant
might be in violation of section 503.062. 
McClinton testified “we were in the hours of
dusk and he had made a stop in a neighborhood which you’re not supposed to do
if you’re in demonstration or in transportation [from one car lot to another]
using this tag.”  Indeed, McClinton stated the vehicle was not traveling in any
direction as if on a test drive or errand but stopped on a street near a
residential neighborhood.  He further
testified“[t]his tag is for that purpose not to joyride in the neighborhood or
anything.”  He also noticed that the
vehicle was stopped and that appellant, inside the vehicle, was engaged in
conversation with an individual outside of the vehicle, in an area in which McClinton had previously made many arrests.  When the individual noticed McClinton in his marked police vehicle, he quickly
retreated into a nearby residence.

            We addressed a similar set of facts
in Vela v. State, 871 S.W.2d 815
(Tex. App.—Houston [14th Dist.] 1994, no pet.). 
There, the officer had stopped a vehicle at approximately 8:20 p.m. after noticing that the vehicle
displayed a dealer’s temporary cardboard tag issued to a Houston dealership
located at least fifteen miles away.  Id. at 816–17.  When the
officer observed the vehicle, the time was several hours after a Friday workday
had ended and the temporary tag was placed on the vehicle in a manner
inconsistent with the officer’s experience. 
Id.  We found that “a car, 15 miles from its home
dealership, displaying the dealer’s temporary cardboard tag, late on a Friday
evening, are sufficient circumstances to arouse a reasonable suspicion” of a
violation of the statute governing the display of temporary dealer’s tags.  See id.
at 818.

            We are mindful that reasonable
suspicion does not rise to the level of probable cause such as is required to
justify a warrantless arrest or search.  See Gajewski v. State, 944 S.W.2d 450,
452 (Tex. App.—Houston [14th Dist.] 1997, no pet.).  If the officer has a reasonable basis for
suspecting that a person has committed a traffic offense, the officer may
legally initiate a traffic stop.  See Powell v. State, 5
S.W.3d 369, 376 (Tex. App.—Texarkana 1999, pet. ref’d).  Proof that a statute was violated is not
required.  See Drago v. State, 553
S.W.2d 375, 377 (Tex. Crim. App. 1977).  A traffic stop is justified, therefore, if
the officer reasonably thought an infraction was in progress.  Zervos v. State, 15 S.W.3d 146, 152 (Tex.
App.—Texarkana 2000, pet. ref’d); Powell, 5 S.W.3d at 376–77.

            Here, the fact that the vehicle
displayed an old tag and was stopped in a residential neighborhood in the early
evening and apparently not engaged in any transportation, provided McClinton with reasonable suspicion to stop the vehicle and
detain appellant.

Length of Detention

            Appellant also contends that the
search and seizure were unlawful by virtue of their unreasonable intensity and
scope.  Because temporary detention of an
individual through an automobile stop is considered a seizure, the stop is
subject to a constitutional mandate that it not be unreasonable under the
circumstances.  Whren v. United States, 517 U.S. 806, 809–10 (1996). 
Although the length of the detention may render a Terry stop unreasonable, there is no “bright line” time limit for Terry stops.  See Balentine v. State, 71 S.W.3d 763,
770 (Tex. Crim. App. 2002). 
The reasonableness of the detention instead depends on whether the
police diligently pursued a means of investigation that was likely to dispel or
confirm their suspicions quickly.  Id.  An investigative detention must be temporary
and the questioning must last no longer than is necessary to effectuate the
purpose of the stop.  Id.

            Both McClinton
and Condon testified that the vehicle and appellant smelled of marijuana.  In the present case the facts show that
reasonable suspicion to detain appellant became probable cause when the
officers detected the odor of illegal contraband.  See Moulden v. State, 576 S.W.2d 817, 820
(Tex. Crim. App. 1978).  Indeed, once the officers detected the odor
of marijuana emanating from the vehicle, there is no question he had probable
cause to conduct a search without a warrant. 
It is well settled that the odor of marijuana is sufficient to
constitute probable cause to search an automobile.  See Isam v. State, 582 S.W.2d 441, 444 (Tex. Crim. App. 1979); Small
v. State, 977 S.W.2d 771, 774 (Tex. App.—Fort Worth 1998, no pet.);  Hernandez v. State, 867 S.W.2d 900, 907 (Tex. App.—Texarkana 1993, no pet.).

            Reasonable suspicion to detain
appellant based on the temporary tag became probable cause when the officers
detected the odor of marijuana, and thus, there was no reason to release
appellant immediately upon commencement of the investigatory detention.  See
Clarke v. State, 785 S.W.2d 860, 869 (Tex. App.—Fort Worth 1990), aff’d, 811 S.W.2d
99 (Tex. Crim. App. 1991).  Thus, we cannot say that the length of the
detention was unreasonable.

            Accordingly, we overrule appellant’s
point of error.

 

Conclusion

            For the foregoing reasons, the
judgment of the trial court is affirmed.

 

 

 

                                                                                    

                                                                        /s/        Eva M. Guzman

                                                                                    Justice

 

Judgment
rendered and Memorandum Opinion filed July 24, 2003.

Panel
consists of Justices Anderson, Seymore, and Guzman.

Do Not
Publish — Tex. R. App.
P. 47.2(b).