

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-16-00109-CR

TIMOTHY LOVINGTON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2015-407,978, Honorable John J. "Trey" McClendon III, Presiding

December 13, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Timothy Lovington, appeals his conviction for evading arrest through the use of a motor vehicle, the latter being deemed a deadly weapon. Three issues pend for resolution. Two mention appellant's motion to suppress that the trial court denied; but whether he uses the issues to attack the decision to deny the motion or to question the sufficiency of the evidence underlying an element of the crime for which he was convicted is unclear. The third issue concerns whether appellant received the effective assistance of counsel. We affirm.

*Background*

Appellant was arrested after engaging in a motor vehicle chase with the police. An officer had been dispatched to a local convenience store around 10:30 p.m. A customer in the store had phoned the police at the behest of the store's cashier. The latter had feared being robbed by three men walking around the store. Included in the three was appellant. Apparently, they had parked their car by the gas pumps and entered the store.

The customer who phoned the police had described the three individuals and the vehicle they had parked outside the store. Among other things mentioned in the description was reference to the car as having a "dealer tag." The foregoing information was provided to the officer dispatched to the scene before arriving thereat. And, as he arrived, the officer saw the car in question begin to drive away. This resulted in him activating the unit's emergency lights in an attempt to halt the car's departure. Appellant, who was apparently driving, did not stop, though.[1] This led to a car chase resulting in appellant crashing the car, thereafter exiting it, and attempting to run away. His attempt was unsuccessful.

*Motion to Suppress*

As previously indicated, appellant filed a motion to suppress, contending that the stop was illegal. He believed that the officer had neither probable cause nor reasonable suspicion to detain him. The trial court held an evidentiary hearing on the motion and denied it. This led to appellant's charged offense being tried to a jury, which jury

---

[1] Appellant disputes whether he was driving off before the officer activated the emergency lights. The officer testified that as "I arrive[d], it [appellant's car] begins to pull away from the gas pump." When asked if that was "when you activate[d] your lights," he replied "yes." A rational juror could interpret this as evidence illustrating the officer activated his emergency lights and thereby attempted to initiate a stop after appellant began to leave.

convicted him of evading arrest. Through his statement of his issues, appellant criticizes the trial court's decision to deny his motion to suppress. Yet, in the body of his brief he argues:

> Relying on the evading statute, the prosecution had to prove that Appellant fled knowing that the other persons were law enforcement and also knowing that they were attempting to make a lawful detention. The evidence is clear that it was not proven that Appellant knew that he was the subject of a lawful attempt to detain him. *Appellant did admit in the motion to suppress that he knew the persons trying to stop him were law enforcement but denied knowing that they were attempting to make a lawful stop because he had paid for his gas and for the snacks that he obtained.* Without proof of that knowledge, the evading statute cannot result in a conviction as imposed upon Appellant.

(Emphasis added).

Our task would be facilitated if appellant's actual dispute was worded more clearly. We are left wondering if he attacks the decision to overrule the motion to suppress or if he questions the sufficiency of the evidence underlying his conviction. Out of utmost caution, we will address both, and, in doing so, overrule both.

A person commits the offense of evading arrest or detention when he intentionally flees from a person he knows is a peace officer attempting lawfully to detain him. *Woods v. State*, 153 S.W.3d 413, 415 n.8 (Tex. Crim. App. 2005); *Rodriguez v. State*, __S.W.3d __, 2016 Tex. App. LEXIS 8494, at *4 (Tex. App.— Amarillo August 8, 2016, no pet.); TEX. PENAL CODE ANN. § 38.04(a) (West Supp. 2016) (stating that "[a] person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him"). Furthermore, the lawfulness of the detention is an element of the crime. *Rodriguez v. State,* 2016 Tex. App. LEXIS 8494, at *5.

3

Whether the detention at bar was lawful formed the basis of the complaint encompassed within appellant's motion to suppress. Because that subject also constituted an element of the crime, its resolution was inappropriate via a motion to suppress. That is, "statutes authorizing pre-trial proceedings do not contemplate a 'mini-trial' on the sufficiency of the evidence to support an element of the offense." *Woods v. State*, 153 S.W.3d at 415. "By asking for the trial judge to suppress the arrest, and the details of his flight and evasion of the detention. . .[a]ppellant [i]s in effect asking the trial judge to rule on whether the prosecution had proof of an element of the offense." *Id.* Yet, the purpose of pre-trial motions, such as one to suppress evidence, is to address preliminary matters, not the merits of the case itself. *Id.* So, under circumstances like those at bar, whether the detention was lawful is not a proper subject for resolution through a pre-trial motion to suppress. *Id.* at 415-16; *accord, York v. State*, 342 S.W.3d 528, 544 (Tex. Crim. App. 2011) (acknowledging the holding in *Woods* and stating that "when the validity of an arrest or detention is an element of the charged offense, litigating the validity of the seizure as a suppression issue is inappropriate [and]. . .the issue should simply be litigated as part of the State's case at trial."). That means the trial court did not err in refusing to grant appellant's motion to suppress, at bar.

As for whether the evidence was sufficient to uphold the verdict because the State failed to prove either 1) the lawfulness of the detention or 2) that appellant knew the detention was lawful, we consider the last argument first. Appellant cites us to no authority requiring the State to establish that the accused knew the detention was lawful; nor do we know of any. Rather, the knowledge aspect of the crime relates to

4

whether the accused knew the person to whom he refused to yield was a peace officer who was trying to detain him. *See Alejos v. State*, 555 S.W.2d 444, 449 (Tex. Crim. App. 1977) (discussing § 38.04 of the Penal Code and stating that "[t]he officer is not required to be in uniform so long as it is proven that the accused in fleeing has knowledge that he is a police officer."). This is borne out by the legislative reason for enacting the criminal statute. The provision "supports a policy of yielding to a police officer's show of authority, *whether or not lawful*, and challenging the lawfulness of the seizure in Court." *Florence v. State*, No. 14-94-00380-CR, 1996 Tex. App. LEXIS 1861, at *10-11 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (not designated for publication) (emphasis added). It is nonsensical to suggest that an accused may avoid conviction simply because he can unilaterally analyze the situation and conclude (irrespective of any education in the law or 4th Amendment jurisprudence) that the peace officer had no basis to detain him. And, we opt not to construe § 38.04(a) in such an absurdist way.

Regarding the lawfulness of the stop, a peace officer may temporarily detain someone based upon reasonable suspicion that crime is afoot. That is, "the officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to a crime." *Lewis v. State*, No. 07-15-00061-CR, 2016 Tex. App. LEXIS 12533, at *10-11 (Tex. App.—Amarillo November 22, 2016, no pet.) (mem. op., not designated for publication); *Ramirez-Tamayo v. State*, __ S.W.3d __, 2016 Tex. App. LEXIS 10905, at *6 (Tex. App.—Amarillo October 5, 2016, pet. filed) (stating that reasonable suspicion ". . . depends upon the presence of

5

specific, articulable facts that, when combined with rational inferences from those facts, would lead an ordinary prudent officer to conclude that the person detained is, has been, or soon will be engaged in criminal activity."). This test may be satisfied if, given the totality of the circumstances, articulable facts unfolding before the officer indicate the occurrence of a traffic stop. *Pulver v. State*, No. 07-15-00112-CR, 2016 Tex. App. LEXIS 12412, at *6-7 (Tex. App.—Amarillo November 17, 2016, no pet. h.) (mem. op., not designated for publication) (stating that "a police officer may lawfully stop a vehicle and briefly detain its occupants for investigative purposes if, under the totality of the circumstances, the officer has reasonable suspicion, supported by articulable facts, that a traffic offense has occurred."); *accord, State v. Patterson*, 291 S.W.3d 121, 123 (Tex. App.—Amarillo 2009, no pet.) (stating that a traffic violation may constitute reasonable suspicion for a detention).

More importantly, the subjective intent of the particular officer conducting the stop is unimportant. *State v. Patterson*, 291 S.W.3d at 123. Rather, what a reasonably prudent officer would perceive under the same circumstances controls the outcome. *Ramirez-Tamayo v. State*, 2016 Tex. App. LEXIS 10905, at *14-15. Consequently, the subjective reasons uttered by the officer to justify the stop have no bearing on the outcome if the totality of the circumstances nonetheless would enable a reasonably prudent officer to reasonably suspect that crime is afoot. *State v. Patterson*, 291 S.W.3d at 123.

Also unimportant is whether an actual traffic violation occurred. *See Leming v. State*, 493 S.W.3d 552, 561 (Tex. Crim. App. 2016) (stating that proof of the actual commission of an offense is not a requisite for a peace officer to stop a motorist to

investigate a traffic offense). It is enough if the circumstances would lead a prudent officer to reasonably think one was in progress or had occurred. *Herrera v. State*, No. 14-02-00620-CR, 2003 Tex. App. LEXIS 6375, at \*18 (Tex. App.—Houston [14th Dist.] July 24, 2003, no pet.) (mem. op., not designated for publication). And, that is what we have here.

Statute restricts the lawful use of dealer tags, as described in § 503.062 of the Texas Transportation Code. *Heisel v. State*, No. 07-98-0027-CR, 1998 Tex. App. LEXIS 4150, at \*5 (Tex. App.—Amarillo July 13, 1998, no pet.) (not designated for publication).[2] Thus, a reasonably prudent officer could conduct a traffic stop of a vehicle displaying them under circumstances indicating they were being used for

---

[2] Section 503.062(a) of the Transportation Code states that:

> (a) A dealer may issue a temporary tag for use on an unregistered vehicle by the dealer or the dealer's employees only to:
>
> (1) demonstrate or cause to be demonstrated to a prospective buyer the vehicle for sale purposes only;
>
> (2) convey or cause to be conveyed the vehicle:
>
> (A) from one of the dealer's places of business in this state to another of the dealer's places of business in this state;
>
> (B) from the dealer's place of business to a place the vehicle is to be repaired, reconditioned, or serviced;
>
> (C) from the state line or a location in this state where the vehicle is unloaded to the dealer's place of business;
>
> (D) from the dealer's place of business to a place of business of another dealer;
>
> (E) from the point of purchase by the dealer to the dealer's place of business; or
>
> (F) to road test the vehicle; or
>
> (3) use the vehicle for or allow its use by a charitable organization.

TEX. TRANSP. CODE ANN. § 503.062(a) (West 2013)

purposes other than those listed in § 503.062. *See Herrera v. State*, 2003 Tex. App. LEXIS 6375, at *15-19 (upholding the stop of a vehicle carrying old temporary dealer tags and driving through a residential area at 6 p.m. in a manner that failed to indicate the driver was on a test drive); *Heisel v. State*, No. 07-98-0027-CR, 1998 Tex. App. LEXIS 4150, at *5-7 (Tex. App.—Amarillo July 13, 1998, no pet.) (not designated for publication) (upholding the stop of a vehicle displaying dealer tags when the vehicle was being driven on a Sunday afternoon in a neighborhood lacking auto dealerships); *Vela v. State*, 871 S.W.2d 815, 817 (Tex. App.—Houston [14th dist.] 1994, no pet.) (upholding a stop where the car displayed a temporary cardboard dealer tag while operating after the end of the workday some fifteen miles from the dealer's location).

Among other things, the officer dispatched to the convenience store at bar was told (before arriving at the scene) of three males walking around the store after operating a car with "dealer tags" at 10:30 at night. Those circumstances liken to the unusual articulable facts present in *Heisel*, *Herrera*, and *Vela*. They reasonably depict a situation wherein dealer tags may have been used for purposes outside those allowed in § 503.062. That is, they were sufficient to permit a reasonable officer to infer that the vehicle was not simply being demonstrated to a prospective driver at 10:30 p.m., or undergoing a road test at 10:30 p.m., or being conveyed from one dealership to another at 10:30 p.m., or being driven to some repair shop at 10:30 p.m., or being driven by a charitable organization at 10:30 p.m., or being operated for any other purpose within the scope of the statute. So, a reasonably prudent officer had reasonable suspicion to temporarily detain appellant's vehicle to investigate a potential traffic violation. That, in

turn, means the State presented sufficient evidence proving the lawfulness of the stop as required by § 38.04(a) of the Penal Code.

*Ineffective Assistance of Counsel*

The final issue we address involves whether appellant received the effective assistance of counsel. He suggested that he did not. In his urging that upon us, though, we were not informed of the particular conduct deemed insufficient. Nor did appellant attempt to describe how he was prejudiced by the unknown conduct. This is of import because one asserting a claim of ineffective assistance must prove deficient performance and prejudice caused by that performance. *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). Failing to label any conduct undertaken by trial counsel as deficient hardly satisfies the first prong of the test. Furthermore, it is not our obligation to search the record to fill the void handed us by appellant. Accordingly, we overrule the issue.[3]

The judgment is affirmed

Brian Quinn
Chief Justice

Do not publish.

---

[3] We also acknowledge appellant's concession in his brief that the current record before us would most likely not support a claim of deficient performance.